433 So.2d 1091 (1983)
Thelma Raizen, wife of/and Alvin PAILET
v.
CITY OF NEW ORLEANS, DEPARTMENT OF SAFETY AND PERMITS.
CITY PARK MID-CITY IMPROVEMENT ASSOCIATION, INC., Mr. and Mrs. Gary Edwards, Mrs. Lillie L. Pittman, Ms. Marilyn Troyani, and Mr. and Mrs. Mark Shafer
v.
Dr. and Mrs. Alvin PAILET.
Nos. 13254, CA-0135.
Court of Appeal of Louisiana, Fourth Circuit.
May 11, 1983.
Rehearing Denied July 26, 1983.
*1092 Michael J. Moran, Metairie, for plaintiffs-appellees.
Michael J. Laughlin, Evelyn F. Pugh, Salvador Anzelmo, New Orleans, for defendants-appellants.
Lloyd N. Shields, New Orleans, for appellants.
Before WARD, REDMANN, SCHOTT, LOBRANO and WILLIAMS, JJ.
WARD, Judge.
The City Park Mid-City Improvement Association [Mid-City] has appealed a judgment which denied their petition for an injunction that would prevent Dr. and Mrs. Pailet from continuing the renovations of their property. That property, a house at 824-26 Ida Place, is located in the Mid-City area of New Orleans, an area zoned by the City as RD-3 which means that only single and two-family dwellings are permitted. The house, however, had been used and occupied as a five-family dwelling before adoption of the Comprehensive Zoning Ordinance in 1970, and that nonconforming use was continued until 1977. From 1977, until October, 1980 when Dr. and Mrs. Pailet purchased the property, the house was not being used as a five-family dwelling; at least four of the apartments were vacant. Whether the other apartment was vacant is disputed. After they purchased the property in 1980, Dr. and Mrs. Pailet began renovating the house to convert it into a four-family dwelling.
The central issue on appeal is whether nonconforming use of the house as a four-family dwelling would violate the Comprehensive Zoning Ordinance of the City of New Orleans, Ordinance No. 4264 M.C.S., Article 12, Section 2, which provides:
No building or portion thereof of land used in whole or in part for nonconforming purposes according to the provisions of this Ordinance, which hereafter becomes and remains vacant for a continuous period of 6 calendar months shall again be used except in conformity with the regulations of the district in which such building is situated. Neither the intention of the owner nor that of anybody else to use a building or lot or part of either for any nonconforming use, nor the fact that said building or lot or part of either may have been used by a makeshift or pretended nonconforming use shall be taken into consideration in interpreting and construing the word "vacant" as used in this section... [Emphasis added.]
Mid-City contends that the Trial Court erred when it denied the injunction because it misinterpreted the word "vacant" in Article 12, Section 2, supra. We find merit in this argument and, accordingly, reverse the judgment of the Trial Court and we enjoin use of the premises for any purpose not conforming to R-3 zoning.
Dr. and Mrs. Pailet bought the property in October of 1980 from Mrs. Ponder, an *1093 elderly woman who had lived on the premises until 1978 when she left to stay with her daughter and son-in-law because of failing health. Before 1978, Mrs. Ponder had lived in one apartment and rented out the other four apartments, but after 1978 when she left, none of the other apartments was rented or occupied. Some of Mrs. Ponder's clothes and all of her furniture, fixtures, and appliances were left in the house. Although Mrs. Ponder stayed with her daughter and son-in-law, she harbored the desire and unrealistic intention to return to her home, unrealistic because she was quite elderly and unable to care for herself. Although he did not believe that she could return to Ida Street, her son-in-law stopped by the house two or three times a week to check on her belongings. Because he was concerned about vandalism, he left lights on in the garage and house, and he stored his trailer and welding machine in the garage to give the house the appearance of being occupied. He also used the refrigerator in the house for the storage of a small amount of food and beer for his use when he visited the house.
The Trial Judge gave written reasons for his denial of Mid-City's Petition for an injunction, concluding that Mrs. Ponder had continued to occupy one of the five apartments in the house and that "the premises were occupied; it was not abandoned; it was not vacant for the required six months...." After finding that Mrs. Ponder had occupied her apartment, the Trial Court held that occupancy of one of the apartments preserved the nonconforming status of the house as a multiple family apartment dwelling, and he ruled that the house could be renovated and changed to a four-family dwelling.
We reverse the judgment of the Trial Court because we find that the property was "vacant" within the meaning of Article 12, Section 2. A building does not have to be unoccupied in the sense that it is abandoned to be considered "vacant" within the meaning of the zoning ordinance. Article 12, Section 2, supra, of the zoning ordinance further defines what is meant by vacant by providing that neither the intention of the owner nor use in a makeshift or pretended nonconforming manner shall be considered when interpreting the word "vacant".
The undisputed facts recited above show that the house was "vacant". The use of the property after 1978 can be termed, at best, makeshift or pretended residential, and we conclude that the Trial Court's finding that the house was not "vacant" is clearly wrong because the ordinance forbids consideration of such a makeshift or pretended use to determine whether property is "vacant".
Moreover, even if we agreed with the finding of the Trial Court that Mrs. Ponder's apartment had not been "vacant", the Trial Court erred in holding that the occupancy of one apartment can preserve the status of nonconforming use for the entire house. The zoning ordinance recognizes that a nonconforming use in existence before passage of the ordinance may be continued, but preservation of the nonconforming status requires a continuing nonconforming use that is not interrupted for more than six months. A continuing conforming use is not sufficient to preserve a nonconforming status, and after 1978, Mrs. Ponder's occupancy, if any, was only a conforming use as a single family dwelling.
The Trial Court relied on Time Saver Stores, Inc. v. The Board of Zoning Adjustments of the City of New Orleans, et al, 261 So.2d 273 (La.App. 4th Cir.1972) as authority for the holding that use of one of the apartments preserved the nonconforming status of the entire building. We do not believe that Time Saver, supra, supports the Trial Court. The holding of Time Saver, supra, is that when one section of a building is continued in nonconforming use while other sections remain vacant, the vacant portions do not lose their nonconforming status. In the words of that Court:
[W]hen one separate section of a building so used [in a nonconforming manner] becomes vacant for six months and the other sections are continued in nonconforming use during that period, the vacant *1094 portion does not lose its nonconforming status under the ordinances. p. 276.
In the instant case, the nonconforming portions of the building were vacant, and the limited use made of the other portion was conforming, and, therefore, Time Saver, supra, is inapplicable.
More pertinent is the case of Parish of Jefferson v. Boyd, 192 So.2d 873 (La.App. 4th Cir.1966). The Jefferson Parish Ordinance involved in that case provides that nonconforming status is lost if the nonconforming use is interrupted for two years. The house in that case had once been used in a nonconforming manner as a tri-plex, but one apartment remained vacant for more than two years, and the separation between the other two apartments was removed, so that the building was used, not as a multiple family dwelling, but as a single family dwelling for more than two years. Because the zoning laws permitted only single family dwellings, this Court held that the nonconforming use had been discontinued, the nonconforming status had been lost, and a nonconforming use could not be re-established.
Accordingly, we conclude that under Art. 12, Sec. 2, supra, when a house has been used in a nonconforming manner and has acquired a nonconforming status, that status may be lost if the premises are used only in a conforming manner for six months or more, and the nonconforming status may not be re-established.
In summation, we reverse for two reasons. We believe that the building remained "vacant" within the meaning of the zoning ordinance for well over six months because the use of the premises was makeshift, at best, and we hold that the nonconforming status was lost and may not be re-established. Moreover, we believe that even if the use was more than makeshift, that use was in a conforming manner, and for this reason also, the nonconforming status was lost and may not be re-established.
For these reasons we believe that an injunction should be issued preventing Dr. and Mrs. Pailet from using their property in a nonconforming manner.
In the second of these suits, Dr. and Mrs. Pailet seek to dissolve a Stop Work Order issued by the City of New Orleans. Since we have held in the first of these two consolidated cases that Mid-City can enjoin Dr. and Mrs. Pailet from using the premises as a four-plex, a request for dissolution of the Stop Work Order apparently would be meaningless. This suit must be considered, however, because Dr. and Mrs. Pailet contend that they have a vested right in the construction permit issued by the City of New Orleans. If they have a vested property right in the permit, the unresolved issue is whether Dr. and Mrs. Pailet can be enjoined from exercising that right. Although this Court has held in Dunn v. Parish of Jefferson, 256 So.2d 664 (La.App. 4th Cir.1972), writ denied 258 So.2d 382 (La. 1972) that a permittee can acquire a vested right, the Court did not decide whether a permittee can be enjoined from exercising that vested right by neighbors and adjoining property owners who are adversely affected. Because we hold, however, that Dr. and Mrs. Pailet did not acquire a vested right under these facts and circumstances, we do not have to reach that issue.
The facts, which were revealed in the trial of the case and which lead us to conclude that there is no vested right, show that after purchasing the property at 824-26 Ida Place, Dr. and Mrs. Pailet instructed their realtor to secure the necessary permits to initiate renovations. Their realtor submitted a permit application to the Department of Safety and Permits and he was told that, because the property would be renovated for nonconforming use, evidence must be submitted to prove that the property enjoyed a nonconforming status.
Thereafter, the realtor secured a copy of a 1977 City tax assessment which showed that the property had been assessed as a four-plex. The Department accepted this documentation as proof of the nonconforming status even though that 1977 tax assessment showed that the building was unoccupied and that no income from rentals had been received during that year. A Department employee made a physical inspection *1095 of the property; a permit was issued which authorized renovations of $5,000.00, and a placard that displayed the permit was attached to a column on the front porch of the house.
Renovations were begun, and the work had been in process for approximately ten months when the neighbors complained to the City that the renovations were for an intended use which would violate the zoning ordinances. After receiving the complaints, the Department of Safety and Permits made another inspection which revealed that the work had exceeded the limits of the permit, and a Stop Work Order was issued. Dr. and Mrs. Pailet initiated this lawsuit seeking dissolution of the Stop Work Order and an injunction ordering the City of New Orleans to desist from further interference with the renovation.
The Trial Judge held that Dr. and Mrs. Pailet had acquired a vested right in the permit, and he enjoined the City from further interfering with the renovations. The Trial Judge also found, however, that Dr. and Mrs. Pailet had exceeded the permit when they spent more than $5,000.00 on the renovations and he ordered the Stop Work Order to be set aside upon the Pailets paying the additional fee to raise the permit amount from $5,000.00 to $50,000.00.
The City of New Orleans has appealed, alleging that the Trial Court erred in determining that Dr. and Mrs. Pailet had acquired a vested right in a building permit that had been erroneously issued. Dr. and Mrs. Pailet contend that they adcquired a vested right in the permit, and furthermore, they argue that the neighbor's challenge against the permit was not timely.
We consider first the question of timeliness. Dr. and Mrs. Pailet rely on the provisions of Section 4 of Article 13 of the Comprehensive Zoning Ordinance for the City of New Orleans which provides that any party aggrieved by a decision of the Director of the Department of Safety and Permits may appeal to the Board "within a reasonable time", as provided by the rules of the Board, and the rules provide that an appeal must be taken within forty-five (45) days from the date of determination by the Director. The record clearly shows that neither the City nor the neighbors appealed the Department's decision to issue the permit within forty-five (45) days. We believe, however, that the forty-five (45) day limitation of Section 4, Article 13 is directed to the time for filing appeals from a decision to issue the permit. It does not limit the City from taking action to prevent the permittee from violating the permit that has been issued. Dr. and Mrs. Pailet applied for and received a permit which authorized renovations of $5,000.00 and Dr. and Mrs. Pailet's renovations far exceeded those authorized. At the time the City issued the Stop Work Order, they had spent approximately $50,000.00, not $5,000.00. We believe that the City may issue a Stop Work Order when the work exceeds the permit, and we believe that this is so even if the violation was discovered because of complaints of another nature. Therefore, the City was authorized to issue the Stop Work Order in this instance.
It is the City's position that the Stop Work Order should not be set aside upon the payment of the additional fee because the permit was erroneously issued. Dr. and Mrs. Pailet argue that they have a vested right in the permit because they believed they had complied with all the requirements of the City and because they undertook renovation in reliance on the permit.
The Trial Judge held that Dr. and Mrs. Pailet had a vested right in the permit, relying on Dunn v. Parish of Jefferson, supra, wherein the Court held that a permittee had acquired a vested right because there was no misrepresentation by the applicant to induce the issuance of the permit. We do not believe that Dunn is controlling. In Dunn, this Court found that the permit was properly issued, that the permittee was justified in relying on it, and that the Jefferson Parish Council could not revoke it. The instant case is clearly distinguishable because the permit for the renovations was improperly issued. Additionally, we believe that Dr. and Mrs. Pailet's reliance on the issuance of the permit in this case was *1096 unjustified because the evidence shows that they were aware that the property had not been rented to anyone in 1977 and certainly not since Mrs. Ponder's departure in 1978. These facts should have made them aware that the nonconforming status was questionable. In fact, the nonconforming status was lost because the nonconforming use was interrupted (suspended) for a period of more than six months. See Art. 12, Sec. 2 of the Comprehensive Zoning Ordinance of the City of New Orleans. Furthermore, even if we found that Dr. and Mrs. Pailet could rely upon the permit, although erroneously issued, they could not have relied upon a $5,000.00 permit as authorization for renovations that cost $50,000.00.
The Trial Court distinguished the case of Nassau Realty v. City of New Orleans, 221 So.2d 327 (La.App. 4th Cir.1969) which held that when a building permit was issued in error and contrary to the City Zoning Ordinance, the permittee did not acquire an irrevocable right because, after the permit was erroneously issued, the consequential hardship was created by the owner who unwittingly believed that the hardship he created would aid him to obtain a proper permit. The Trial Court correctly distinguished Nassau because there has been no allegation that Dr. and Mrs. Pailet created their hardship as a litigation strategy. Although Nassau is distinguishable, we agree with its discussion of this problem.
"If plaintiff has sustained a loss and has been subjected to undue hardship through no fault of its own but as a result of the director of the Department of Safety and Permits having erroneously issued a permit upon which it relied it may have a just grievance against the Department. However, we express no opinion with respect to that aspect of the case. Whatever remedy it might have, however, does not rely on action which will merely pass a hardship onto its neighbors whose property would be reduced in value by the granting of the variance." 221 So.2d 327, 330.
We conclude that the City was justified in issuing the Stop Work Order because Dr. and Mrs. Pailet exceeded the $5,000.00 limits of the building permit. We find that Dr. and Mrs. Pailet are not entitled to authorization for additional work because the object of that renovation constitutes a violation of the zoning laws. We hold that Dr. and Mrs. Pailet have not acquired a vested right in the erroneously issued building permit; their reliance on the permit was unjustified, and neighbors and property owners should not suffer because an employee of the City erroneously issued a permit. Accordingly, the judgment of the Trial Court is reversed. Dr. and Mrs. Pailet are hereby enjoined from use of the house as other than a single or two-family dwelling. All costs of trial and appeal are to be paid by Dr. and Mrs. Pailet.
REDMANN, C.J., concurs with written reasons.
LOBRANO, J., dissents with written reasons.
REDMANN, Chief Judge, concurring.
If two other apartments in Mrs. Ponder's building had remained occupied while infirmity kept her away from her own apartment home for over six months, it would be unreasonable to hold that she could not return to live in her own apartment home because it had been "vacant" and therefore lost its nonconforming status in this two-family zone.
But because all four other apartments were vacant for over six months, it is reasonable to say that the entire nonconforming "portion" of her building (some indeterminate three of the five apartments) was vacant during that time. Despite the grammatical difficulties of the ordinance pointed out in State ex rel. Time Saver v. Board 11 years ago and not amended sinceits "portion" provision can be fairly applied when all nonconforming parts of the building remain vacant, or when (notwithstanding that each one of five apartments could be deemed nonconforming in a two-family zone) the non-vacant portions of the building do not by themselves constitute *1097 and thus continue a nonconforming use of the building.
On that basis I concur in the injunction. I also concur in the view that the new owners acquired no vested interest by their building permit.
LOBRANO, Judge, dissenting.
I respectfully dissent from the majority's holding that Dr. and Mrs. Pailet did not acquire a vested right in the subject building permit. In good faith, the appellees presented the evidence requested of the Department of Public Safety and Permits, and that department determined that the property was "non conforming" and therefore a permit should issue. The majority's reasoning would require every applicant for such a permit to first seek a judicial determination of the property's status before beginning construction. If the applicant cannot rely on the Department of Permits, then who can he rely on? Appellees cannot be punished because the Department of Safety and Permits "guessed wrong" when they issued the permit. Further, I am unable to distinguish Dunn v. Parish of Jefferson, 256 So.2d 664 (La.App. 4th Cir.1972), writ denied 258 So.2d 382 (La.1972). The majority attempts to distinguish that case from the present by stating that the permit in the Dunn case was properly issued and that the permittee had a right to rely on same. However, the majority neglects the fact that the Department of Public Safety felt the permit in the instant case was "properly issued" until they were sued. I see no difference.