560 So.2d 983 (1990)
Mr. and Mrs. Erskine J. BROWN
v.
CITY OF NEW ORLEANS, et al.
No. 89-CA-1874.
Court of Appeal of Louisiana, Fourth Circuit.
April 26, 1990.
*984 Phelps, Dunbar, Marks Claverie & Sims, Rutledge C. Clement, Jr., New Orleans, for plaintiffs-appellees Mr. and Mrs. Erskine J. Brown.
Kathy Lee Torregano, Deputy City Atty., William D. Aaron, Jr., Chief Deputy City Atty., Okla Jones, II, City Atty., New Orleans, for defendant-appellant City of New Orleans.
Before KLEES, WARD and BECKER, JJ.
KLEES, Judge.
This suit involves the alleged forfeiture of the nonconforming use status of a building owned by plaintiffs, Mr. and Mrs. Erskine J. Brown. We affirm.
Plaintiffs own a building with the municipal address of 6214 Laurel Street in New Orleans which is located within a district classified as RM-3 (multiple family residential district) under the Comprehensive Zoning Ordinance of the City of New Orleans "C.Z.O." (Ordinance 4264 M.C.S., effective August 1, 1970). Prior to the adoption of the C.Z.O., the building was being leased as a filling station. That use continued under the C.Z.O. as a B-1 (neighborhood business) nonconforming use.
The filling station continued to operate until August of 1986. The plaintiffs then converted the building into a used furniture store, another permitted B-1 use, operating under the name of the "Laurel Shop."
In June of 1987, plaintiffs obtained a building permit to perform renovations to repair termite damage. The construction lasted from June until November of 1987.
During the time construction was going on, JuneNov. 1987, operation of the business was hindered because the furniture had to be moved out of the store every day. Nevertheless, Lawless Honore, who performed the construction for plaintiffs, signed an affidavit and testified that he saw 30-35 customers in the shop during the time he was on the job and further testified that Mrs. Brown was always present during business hours which were 11:00 a.m. to 4:00 p.m.
On May 13, 1987, a letter was sent to Paul May, Director of Zoning, and Ulysses Williams, Director of Safety and Permits, which confirmed that the addressees had made their decision as of March 18, 1987 that the building at 6214 Laurel Street had lost its nonconforming use status. This was never communicated to the plaintiffs. In August of 1987 the plaintiffs requested that the Department of Safety and Permits ("DSP") grant them permission to convert the premises into a commercial parking garage. That request was denied in or about November 1987 since it would involve an impermissible structural alteration. Sales taxes from the Laurel Shop were paid in January, March, October and November of 1987 and in January and March of 1988. No sales were reported from April through September of 1987.
In February of 1988 the plaintiffs applied for permission to convert the premises to an aerobics and dance studio. The DSP informed plaintiffs that it was not necessary to continue operating their business during the investigation of this request and that they would not be prejudiced because of this "administrative down time." No such concession was made by the DSP during its investigation of the 1987 request. On September 7, 1988 the plaintiffs were informed that they had lost their nonconforming use status because the business was being operated in a "casual, intermittent *985 or temporary" manner. This decision was apparently based on the lack of sales tax paid during the six month period from April through September 1987.
Plaintiffs appealed this decision to the Board of Zoning Adjustments ("board") which ruled that the property in question had indeed lost its legal nonconforming status due to casual, intermittent or temporary use. The plaintiffs applied for and were granted a writ of certiorari from the district court which reversed the board's ruling reinstating legal nonconforming status to the plaintiff's building. Defendants, the City of New Orleans through the DSP and the board appeal.
The issues before this court are: whether the trial court erred in taking additional evidence upon review of the ruling of the board, and whether the trial court erred in overruling the decision of the board.
The defendant's first contend that the trial court erred in taking additional evidence to supplement the record from the board's hearing. La.R.S. 33:4727 E(4) provides:
(4) If, upon the hearing, it shall appear to the court that testimony is necessary for the proper disposition of the matter, it may take additional evidence or appoint a referee to take such evidence as it may direct and report the same to the court with his findings of fact and conclusions of law, which shall constitute a part of the proceedings upon which the determination of the court shall be made.
The trial court thus has discretion in deciding whether to take additional evidence. Coliseum Square Ass'n v. Board of Zoning Adjustments, 374 So.2d 177 (La.App. 4th Cir.1979). In this case the trial court had legitimate questions as to the basis for the decision of the board as well as to the fairness of the actions of the DSP. We find no abuse of discretion.
Defendants next contend that the trial court erred in overruling the decision of the board. Since a nonconforming use is inconsistent with the purpose of zoning ordinances, which is to confine certain classes of buildings and uses to certain areas, such status should, consistent with the property rights of the individuals affected and substantial justice, be viewed narrowly and have all doubts resolved against continuation or expansion of the nonconformity. Redfearn v. Creppel, 455 So.2d 1356 (La. 1984). A zoning ordinance may validly provide that the discontinuance of a nonconforming use for a prescribed period of time will result in the forfeiture of such nonconforming status. Fuller v. City of New Orleans, Dept. of Safety and Permits, 311 So.2d 466 (La.App. 4th Cir.1975).
A building enjoying nonconforming use status which remains vacant for a continuous period of six calendar months shall forfeit such status. 4264 M.C.S. (C.Z.O.) Art. 12 § 2. Thus preservation of nonconforming use status requires a continuing nonconforming use that is not interrupted for six months or more. Pailet v. City of New Orleans, Dept. of Safety and Permits, 433 So.2d 1091 (La.App. 4th Cir.1983), writ den. 440 So.2d 757 (La.1983).
While we are bound to the conclusions of fact of the board absent an abuse of discretion, Coliseum Square Ass'n v. Board of Zoning Adjustments, supra, an administrative board cannot usurp the judiciary's exclusive right to interpret the law. La. Const. Art. 2 § 2, Art. 5 § 1. Here, not only did the board abuse its discretion, but it made an erroneous interpretation of the law.
It is undisputed that prior to April of 1987, the Laurel Shop did indeed enjoy legal nonconforming use status. Yet both the DSP and the board decided that the status had been lost based on Art. 12 § 6 of the C.Z.O. That section provides in part that "casual, intermittent, temporary, or illegal use of land or buildings shall not be sufficient to establish the existence of a nonconforming use ..." (emphasis ours). In this case the nonconforming use need not be established since the defendants have conceded that such status existed. Rather, the appropriate issue is whether the status has been forfeited. Section 6 does not address the forfeiture of nonconforming use status.
*986 Although there was considerable debate at the hearing before the board concerning the six month period in 1987 during which no sales taxes were paid by the Laurel Shop, neither the board nor the DSP found that the building was "vacant" for a six month period within the meaning of Article 12 Section 2 of the zoning ordinance. We agree. The evidence indicates that there was more than just a skeleton business set up in order to maintain the nonconforming use status. The affidavits and testimony of both Mrs. Brown and Mr. Honore indicate that either Mr. or Mrs. Brown was in the shop at all times during business hours and that there were customers in and out. Mrs. Brown additionally testified that the city inspectors witnessed and were part of the business activity of the Laurel Shop during the period in question. City Building inspectors visited the premises frequently. One inspector browsed through the merchandise from time to time and even requested Mrs. Brown to look for furniture for him. The defendants could have called the inspectors to testify but did not. Defendant's failure to call its own employees to the stand to shed light upon the matter gives rise to a presumption that the employees would not have corroborated the facts as defendants would have them. Ruthardt v. Tennant, 252 La. 1041, 215 So.2d 805 (La.1968). Plaintiffs should not lose their nonconforming use merely because business was bad for those six months.
Additionally, the DSP voluntarily submitted to the board affidavits signed by neighborhood residents as evidence that no business activity had been conducted on the premises since the spring of 1986. Mr. May testified that he knew that these affidavits were not accurate. Finally, the trial court held that the decision by the DSP to apply non-prejudicial "administrative down time" to plaintiffs 1988 request for use change but not to the 1987 request was arbitrary, capricious and fundamentally unfair. We agree. Such down time should be applied indiscriminately if it is to be applied at all. Thus the administrative down time should be applied from August 1987 through November 1987, thereby cutting short the alleged six month "vacancy."
The trial court was correct in finding that the property at 6414 Laurel Street did not forfeit its nonconforming use status since it was not vacant for six months within the meaning of Article 12 section 2 of the Comprehensive Zoning Ordinance.
Defendant's further contend that the trial court cannot substitute its judgment for that of the board on a writ of certiorari. This argument is without merit. La.R.S. 33:4727 E(5) gives the trial court the power to affirm, reverse or modify the board's decisions.
Accordingly, for the reasons stated, the judgment of the trial court is affirmed.
AFFIRMED.