602 So.2d 112 (1992)
CITY OF NEW ORLEANS
v.
Nile J. HAMILTON & Ricardo Hamilton.
No. 91-CA-2142.
Court of Appeal of Louisiana, Fourth Circuit.
June 18, 1992.
*113 Dwight W. Norton, Asst. City Atty., N. Eleanor Graham, Deputy City Atty., Brett Prendergast, Chief of Civ. Litigation, Kathy Torregano, Chief Deputy City Atty., and William D. Aaron, Jr., City Atty., New Orleans, for plaintiff/appellant.
John H. Gniady, New Orleans, for defendants/ appellees.
Before BYRNES, CIACCIO and WALTZER, JJ.
WALTZER, Judge.
The City of New Orleans appeals from a judgment of the trial court denying their motion for a preliminary and permanent injunction and a ruling that 2241 St. Anthony Street had acquired legal non-conforming use status.
Nile Hamilton and his wife acquired the property located at 2241 St. Anthony Street in New Orleans in July of 1953. They operated the property as Hamilton's Sweet Shop. At that time, the area was zoned as a classification E-Neighborhood Shopping District, which allowed the use of property as a sweet shop. In 1971, the property was leased to Ms. Alice Baudy and was operated under the trade name Esa's Snack Shop. In 1972, a comprehensive zoning amendment reclassified the area as a RD-3 Two (2) Family Residential District, which does not allow the operation of a sweet shop. In 1973, the property was rented to Mr. Leon Ruffin, who continued to use the property as a sweet shop. In 1975, the Hamiltons began operating the premises as a sweet shop for themselves. The property, according to the defendants, was primarily used *114 as a snowball stand during most of the year, and closed only for the few winter months. Both parties agree that the property was operated as a sweet shop or a grocery store from 1953 to at least 1975. In 1980, Ricardo Hamilton applied to the zoning commission for a spot zoning change for 2241 St. Anthony Street from a RD-3 Two Family Residential to a B-1 Neighborhood Business District. The application was denied. At this hearing, Mr. Hamilton testified that the property had been owned and operated as a business by his mother until five years before the 1980 application for a spot zoning change. It is unclear from the testimony in the record whether Mr. Hamilton was stating that the property had not been used as a business for five years prior to 1980, or whether the business had not been operated by his mother for five years. In 1990, the Hamiltons applied for a occupational license to operate the property as a sweet shop. The city granted the license, but later claimed that they did so in error and demanded the Hamiltons to return the license and cease operation of their sweet shop. When the Hamiltons refused, the city brought suit for an injunction. The trial court denied the City of New Orleans' petition for an injunction, and ruled that the property at 2241 St. Anthony Street had obtained a legal non-conforming status. The City then appealed to this court.
The issues to be considered on appeal are:
(1) whether the trial court was correct in finding that the property had obtained a legal non-conforming use status,
(2) whether the property has maintained its non-conforming use status, and
(3) whether the proper burden of proof has been met to order injunctive relief.
Our discussion begins with an understanding of the importance of zoning restrictions and the inherent legislative role in establishing and enforcing them. Zoning is designed to foster improvement by conferring certain classes of buildings and uses to certain localities the purpose of which is to reduce or eliminate the adverse effects of one type of land use on another by segregating different uses into different zoning districts. Redfearn v. Creppel, 455 So.2d 1356, 1366 (La.1984), citing Village of Euclid v. Ambler Realty Co., 272 U.S. 365, 47 S.Ct. 114, 71 L.Ed. 303 (1926). Zoning by nature is a legislative function and is granted to local authorities by both Louisiana statute and its constitution. LSA-R.S. 33:4721; La. Const. art. VI section 16. The City of New Orleans is thus well within its rights to zone the neighborhood which includes 2241 St. Anthony as a Two Family Residential District, and was within its rights to refuse a spot zoning change of that property to a business use in 1980.
While local municipalities are given the power and function of defining the use of property as they best see fit, property users are not wholly unprotected or expected to change their use of property every time their area is rezoned. It is well settled law that use of property which does not conform to the use zoned appropriate for that area may still enjoy the same legal status as property that does conform. Non-conforming use status is designed to protect those uses which were legally established before the enactment of a restrictive regulation. Thus, a legal non-conforming use is one which was lawful prior to the enactment of a particular zoning regulation and which is continued after the effective date of the regulation, although the continued use violates the new zoning restrictions for the district in which the property is situated. City of New Orleans v. Elms, 566 So.2d 626, 628 (La.1990), citing Redfearn v. Creppel, 455 So.2d 1356 (La.1984).
LSA-R.S. 9:5625 further provides that property may achieve legal non-conforming use status if the period of time allowed for enforcing the zoning regulation prescribes:
B. In all cases where the prescription provided for herein (part A) has accrued, the particular property involved in the violation of the zoning restriction, building restriction or subdivision regulation, shall enjoy the same legal status as land uses, construction features of buildings or subdivisions made nonconforming by the adoption of any zoning restriction, *115 building restriction or subdivision regulation. LSA-R.S. 9:5625.
However, while property may obtain legal nonconforming status either by conforming with zoning restrictions before the effectiveness of new zoning regulations or by the prescription of the allowable time to enforce the restriction, the legal nonconforming status may be lost if the use of the property is interrupted by a period of six (6) months. M.S.C. Article 12 section 2, Comprehensive Zoning Ordinance of the City of New Orleans (1970). Furthermore, the provisions for continuation of nonconforming status should be strictly construed to secure their gradual elimination. Redfearn v. Creppel, 455 So.2d 1356 (La.1984); City of Lake Charles v. Frank, 350 So.2d 233 (La.App. 3rd Cir. 1977).
A claim that property has acquired a legal nonconforming status is an affirmative defense and carries a burden of proof by a preponderance of the evidence. City of New Orleans v. Elms, 566 So.2d 626, 630 (La.1990); City of New Orleans v. Cantelli, 136 So.2d 838 (La.App. 4th Cir. 1962). This burden may be met by showing that the property was used for a nonconforming purpose at the time the ordinance was enacted. City of Lafayette v. Black, 336 So.2d 982 (La.App. 3rd Cir. 1976), writ den. 339 So.2d 850 (La. 1976). Once this burden has been met, the burden then shifts to the party seeking to enforce the zoning restriction to show that such use has been interrupted by six months thus losing its nonconforming status. City of New Orleans v. Elms, 566 So.2d at 630.
The City of New Orleans concedes that the Hamilton sweet shop was operating from the 1950s to the mid 1970's. Evidence that 2241 St. Anthony was operated as a sweet shop up until 1975 is fairly abundant.[1] The Hamiltons have met their burden of proving that the property had acquired a legal non-conforming status. This is so because the zoning regulation prior to the 1972 RD-3 Two Family Residential District allowed for a sweet shop.[2] Thus, the sweet shop, which at one time conformed with the zoning restrictions, obtained its legal non-conforming status when the new regulation became effective. It was then up to the City of New Orleans to carry their burden of proving that the property had lost its legal non-conforming status.
The City of New Orleans presented as their main evidence Mr. Hamilton's testimony at the 1980 hearing where he attempted to achieve a spot zoning change for 2241 St. Anthony. The City claims that this testimony indicates that the property had not operated as any kind of business since 1975. The City further contends that this prior testimony, which can amount to nothing more than a prior inconsistent statement to the defendant's current affidavit, should be given more weight than the defendant's affidavits which state that the premises have operated and are currently operating as a sweet shop. The transcript of the 1980 hearing for the spot zoning change reads as follows:
Mr. Hamilton: "First of all, I would like to say that this particular piece of property has been operated as a commercial establishment for some ten years, up until five years ago, by my mother. And it was a family owned business. Up until five years ago the place, like I said, had been operated as a commercial grocery store; no barroom. No other type of liquor selling establishment.
And we feel that the place should be rezoned because of the design of the building, and because of the fact that we would like to reestablish the grocery store business on that particular corner."
Q: "It is presently being used as a grocery store?"
Mr. Hamilton: "No sir."
Q: "When was the last time it was operated as a business?"

*116 Mr. Hamilton: "Up until about, I think it was five years ago when it was operated as a business. It had been operated by three different people since we had it ten years ago, ten or fifteen years ago."
This testimony is somewhat ambiguous, especially in light of Mr. Hamilton's current affidavits which explain that the property had ceased being run as a grocery store by his mother in 1975, but had continued operating as a sweet shop since then run by himself.
However, regardless of the seemingly contradictory nature of the testimony, this Court may only consider such evidence for impeachment purposes and not for the truth of the matter asserted. State v. Williams, 445 So.2d 1171 (La.1984); Burford v. First National Bank in Mansfield, 557 So.2d 1147 (La.App. 2nd Cir. 1990); State v. Floyd, 544 So.2d 616 (La. App. 3rd Cir.1989); State v. Bertram, 517 So.2d 1264 (La.App. 4th Cir.1987). Therefore, as we are unable to consider the substantive value of the 1980 testimony, such evidence is not enough to carry the City's burden of proof that the sweet shop had ceased operation for six months thereby losing its non-conforming status.
The City filed an affidavit by Paul May, the Zoning Administrator for the City of New Orleans employed in the Department of Safety and Permits. He attested to the current zoning of the property which was not in dispute. However, his conclusory statement that the property had never attained a legal nonconforming use had no evidentiary value as the record was clear that this assertion was in error and the city has conceded in brief that a nonconforming use existed at least until 1975.
The City also offered an affidavit of Marian Longmeyer who had resided in the neighborhood since 1965. She declared that the last business operated at 2241 was a snack shop that closed in 1975 and no business was resumed until 1990.
The City did not offer any affidavit from the Department of Revenue to show the absence of sales tax returns subsequent to 1975 or the absence of occupational licenses for the premises. The City did not produce records from New Orleans Public Service to show no meter listed in the name of any business. Although this proof only goes to prove a negative, i.e., the absence of business activity, it was the City's burden to do so.
In opposition to the City's proof, the defendants offered affidavits of Mr. and Mrs. Nile J. Hamilton, Sr., Wilfred Duplessis, Henry and Zilda Spriggs and Maurice Fortin, all of whom swore that the sweet shop operated at 2241 St. Anthony had not been closed for six months.
Because of the conflicting affidavits, and in the absence of other proof to support the City's position, we cannot say that the trial court was clearly wrong in its factual conclusion that the property, as a sweet shop, had maintained its nonconforming status.
For the foregoing reasons, the judgment of the trial court is affirmed.
AFFIRMED.
NOTES
[1] Sales tax returns dated as far back as 1958, electrical inspection approvals from 1962, and a lease agreement from 1971, were all presented as evidence of the sweet shop's legal nonconforming use.
[2] Prior to the 1972 ordinance, 2241 St. Anthony Street was zoned as an E-Neighborhood Shopping District, which allowed the operation of a sweet shop.