709 So.2d 333 (1998)
Jerome and Patricia HUMPHREY, et al.
v.
Andrew ROBERTSON, Jr., Patricia A. Arriola.
No. 97-CA-1742.
Court of Appeal of Louisiana, Fourth Circuit.
March 11, 1998.
Rehearing Denied March 31, 1998.
*334 Robert E. Arceneaux, Barham & Arceneaux, New Orleans, for Plaintiffs-Appellees Jerome and Patricia Humphrey, David Schaefer, June and Bradford Rogers, Charles Coron, Adolph Bynum, Steward Bertrand, and Eric Holsapple.
Covert J. Geary, Kevin R. Hansbro, Jones, Walker, Waechter, Poitevent, Carrere & Denegre, L.L.P., New Orleans, for Defendants-Appellants Andrew Robertson, Jr. and Patricia R. Arriola.
Evelyn F. Pugh, Deputy City Attorney, Verna R. Guesnon, Assistant City Attorney, Avis Marie Russell, City Attorney, New Orleans, for Defendant-Appellant City of New Orleans.
Before KLEES and BYRNES, JJ., and GULOTTA, J. Pro Tem.
JAMES C. GULOTTA, Judge Pro Tem.
This matter involves a dispute between plaintiffs, neighbors of Little People's Place, a small club in the Treme area of New Orleans, and defendants, owners of the club, who are seeking legal nonconforming use status from the City to provide "live" entertainment.
The defendant club owners sought on two separate occasions, in 1992 and 1993, to obtain a permit for live entertainment from the Department of Safety and Permits. Both applications were denied. No appeal to the Board of Zoning Adjustments was taken from either denial by the club owners. Thereafter, the defendant owners filed a new application in 1994, which they voluntarily withdrew. On April 18, 1995, in response to a fourth application, the Director of the Department of Safety and Permits granted "legal nonconforming use" status to the defendant bar owners, allowing the club to conduct live entertainment. On December 8, 1995, the Board of Zoning Adjustments affirmed the decision of the Director of the Department Safety and Permits and ordered the issuance of a permit with certain modifications.
Thereafter, the plaintiff neighbors, in a writ application to the Civil District Court, sought reversal of the decision of the Board of Zoning Adjustments. The trial judge maintained an exception of res judicata, concluding that since no appeals were taken from the two earlier decisions of the Department of Safety and Permits in 1992 and 1993, those judgments became final and binding.
The issue on the merits, as to whether the Board properly affirmed the agency's finding of legal nonconforming use status was not addressed by the trial judge. The defendant club owners and the City appeal. We affirm.

*335 PROCEDURAL ISSUE
The initial question with which we are confronted is whether the trial judge properly maintained an exception of res judicata. The attack by the defendants on the trial judge's holding is two-fold. First, defendants contend that because res judicata is a peremptory exception which must be "specially pleaded," the trial judge, sua sponte, supplied the exception in contravention of La.C.C.P. Article 927.[1] The second basis upon which defendants seek reversal of the judgment maintaining the exception of res judicata is that the determinations of an administrative agency cannot serve as the basis for a plea of res judicata.
While no specific exception based on res judicata was filed by plaintiffs in a separate pleading, the exception was pleaded in a Second Supplemental and Amended Petition.[2]
No technical form of pleading is required in Louisiana, and all pleadings must be reasonably construed so as to afford litigants their day in court. Neel v. Citrus Lands of Louisiana, Inc., 629 So.2d 1299, 1301, (La.App. 4 Cir.1993). See also La. C.C.P. art. 865. Courts must look to the substance of the pleadings and grant the appropriate relief to which the parties are entitled under the facts raised in the pleadings. Miller v. Miller, 480 So.2d 789 (La. App. 3 Cir.1985), citing Graham v. Metzler, 402 So.2d 768 (La.App. 4 Cir.1981). In Fox v. National Gypsum, Inc., 96-25 (La.App. 5 Cir. 4/30/96), 673 So.2d 1223, the court considered whether an objection of res judicata raised in an answer to a disputed claim for compensation was sufficient to properly place the issue before the court. The assertion that the claimant was precluded from receiving compensation for his injury based on a prior settlement raised in an answer was found sufficient. See also: Monk v. Scott Truck and Tractor, 619 So.2d 890 (La.App. 3 Cir.1993).
Based on this line of jurisprudence, we conclude that the objection of res judicata was properly before the trial judge.
However, a more troublesome question arises as to whether determinations of an administrative agency, where no appeal has been taken, can serve as the basis of an objection of res judicata.
The Louisiana Supreme Court in Kelty v. Brumfield, 93-1142 (La. 2/25/94), 633 So.2d 1210, rehearing denied, 93-1142 (La. 3/25/94), 635 So.2d 247, stated that the doctrine of res judicata is to be strictly construed, and that any doubt concerning its applicability is to be resolved against the mover. Further, our courts have been reluctant to allow an administrative agency's determination to be the basis for res judicata and, have applied the doctrine to such proceedings only where the agency has acted in a quasi-judicial capacity and where the parties have been given proper notice and ample opportunity to be heard. Gulf States Utilities Co. v. Louisiana Public Service Commission, 633 So.2d 1258, 1267 (La. 3/17/94). Ultimately, it is the judicial or quasi-judicial capacity in which the agency *336 acts that is the fundamental tenet allowing the application of res judicata to administrative decision making.
Where an administrative agency employs the essential procedural characteristics of a court, its determinations should be accorded the same finality that is accorded judicial proceedings. See Restatement of Judgements 2nd, Sec. 83, Comment (b). Further, where the administrative agency is engaged in deciding specific legal issues and claims through a procedure substantially similar to those employed by courts, the agency is, in substance, engaged in adjudication, and its actions should be accorded that normally attached to judicial holdings.
Turning now to a consideration of the proceeding before the Department of Safety and Permits, we can neither find nor have we been shown any procedural or substantive rule requiring the Department of Safety and Permits to provide notice to any party prior to its determinations.[3] Nowhere in the City Charter creating and defining the functions of the Department of Safety and Permits do we find any notice requirements.
Further, we find no requirement that the administrative agency act in a quasi-judicial capacity to resolve disputed issues where the adverse parties were provided an opportunity to be heard and to fully litigate issues. The Department's functions and responsibilities are administrative and ministerial and not judicial or quasi-judicial in nature. In contrast, the Board of Zoning Adjustments is required to give notice to any interested parties and provide a hearing where all parties are given an opportunity to be heard. See La. R.S. 33:4727.
When considering the functions and responsibilities of the Department of Safety and Permits, we are led to conclude that the administrative agency's findings cannot serve as the basis for a holding maintaining the exception of res judicata.

MERITS
While the merits of this matter were not addressed by the trial judge as a result of his ruling on the res judicata question, in the interest of judicial economy, we consider the substantive question here rather than remand this matter to the trial judge. In this connection, it has been represented by all parties in interest that the record is complete and properly before this court for consideration.
The basis of the decision to grant the permit to the defendant club owners by the Director of the Department of Safety and Permits and affirmed by the Board of Zoning Adjustments was that the Department had notice of the existence of live entertainment and the City had not taken action within the two year prescriptive period as provided in La. R.S. 9:5625.[4] We disagree.
*337 On January 31, 1992, a complaint was made to the City by Father Thomas Ellerman, who had lived across the street from the club for approximately eight years. Father Ellerman wrote a letter to Councilwoman Jackie Clarkson advising that live entertainment was being conducted at the club. His complaint was forwarded by Clarkson to the Department of Safety and Permits and was placed in the Department's file. At this point in time, the Department had been placed on notice of a violation. The prescriptive period commenced to run from January 31, 1992 and the City had two years from that date to institute an action to abate the violation.
In Inter-Urban Bar Association v. The City of New Orleans, Civil Action No. 93-227, (consolidated with the instant case), several bar owners including the defendant owners, filed suit against the City disputing procedures for issuing live entertainment and other permits. In that suit, the City filed a reconventional demand for injunctive relief in November, 1993, alleging that the defendant bar owner (among other establishments) were "allowing, causing or permitting the performance of live entertainment in violation of the Comprehensive Zoning Ordinance and the City Code."
When we consider the date of the filing of the reconventional demand, together with the date of notice to the City, we are led to conclude that prescription was interrupted by the filing of the reconventional demand within the two year period of knowledge gained by the City. (January 31, 1992 knowledge acquired by the Department, and November, 1993the time of the filing of the reconventional demand.) See La.C.C.P. 1061. Furthermore, Paul May, the Director of the Department of Safety and Permits, admitted in his deposition that had he known of the reconventional demand instituted by the City in the Inter-Urban litigation, he would not have approved the application submitted by the club owners without first contacting the City's law department. We conclude, therefore, that the Department and the Board of Zoning Adjustments was in error when they concluded that prescription barred the City from taking action against the club owners.
Included in the record are tapes of the hearing before the Board of Zoning Adjustments. In these tapes, during argument, counsel for the defendant club owners noted that the reconventional demand at issue was not served on the parties and was subsequently withdrawn by the City. While there is nothing in the record to substantiate or dispute this contention, in either case the effect of the reconventional demand is unchanged.
The next question with which we are confronted is whether the club owners have established that the club falls within a legal nonconforming use. A nonconforming use is designed to protect those uses which were established before the enactment of a restrictive zoning regulation. A legal nonconforming use is one which was lawful prior to the enactment of a particular zoning regulation and which is continued after the effective date of the regulation, although the continued use violates the new zoning restrictions for the district in which the property is situated. See City of New Orleans v. Hamilton, 602 So.2d 112 (La.App. 4 Cir. 1992), citing City of New Orleans v. Elms, 566 So.2d 626 (La.1990). Since a nonconforming use is inconsistent with the purpose of zoning ordinances, decisions regarding such status should be viewed narrowly with all doubt resolved against continuation or expansion of the non-conforming use. Brown v. City of New Orleans, 560 So.2d 983 (La.App. 4 Cir.1990). Another precept that we are mindful of is that a non-conforming use may be lost if the use of the property is interrupted or has been discontinued for a period of six months or more. M.S.C. Article 12, Section 2, Comprehensive *338 Zoning Ordinance of the City of New Orleans (1970). See: Brown v. City of New Orleans, supra.
In order to attain a nonconforming use status in the instant case, the live entertainment must have been continuous and not interrupted for a period in excess of six months. M.S.C. Article 13, Section 13.5, Comprehensive Zoning Ordinance of the City of New Orleans (1970); Brown v. City of New Orleans, supra, 560 So.2d at 985, citing Pailet v. City of New Orleans, 433 So.2d 1091 (La.App. 4 Cir.1983), writ denied, 440 So.2d 757 (La.1983); City of New Orleans v. Hamilton, 602 So.2d at 115. It is clear that the property has been operated as a bar since the late 1950's or early 1960's and has continued in that capacity since.
The issue then before us is whether the evidence establishes continuous live entertainment in the establishment in order to ascertain whether Little People's Place occupies the status of a nonconforming use.
While we are mindful that decisions of the Board of Zoning Adjustments are afforded a presumption of validity and a reviewing court should not merely substitute its own judgment for that of the Board, unless there is a clear showing that the Board was arbitrary and capricious or abused its discretion. Elysian Fields, Inc. v. St. Martin, 600 So.2d 69 (La.App. 4 Cir. 1992). Nonetheless, it is clear from the record that the basis of the decision of the Department of Safety and Permits to allow live entertainment was based on a prescription question and the decision of the trial judge was based on res judicata. Under these circumstances, we consider the substantive issue of legal nonconforming use without the benefit of the Board of Zoning Adjustments or trial judge's conclusions on the issue.
Affidavits submitted by the defendant club owners establish that sometime during the 1960's, the club began hosting live entertainment on a spontaneous and informal basis. This consisted of birthday parties during which live music was played, events where disc jockeys performed, occasions where second line clubs stopped to perform, and instances where local musicians would perform. The defendant club owners admitted that for the most part this activity was sporadic and not planned from either an advertising, promotional or commercial standpoint. It was not until 1992, when day-to-day proprietorship of the club changed, that live entertainment began to be advertised and promoted as more of a regularly scheduled activity. Affidavits from several neighbors and patrons suggest that live entertainment was performed on the premises as far back as the early 1960's. However most of the affidavits submitted related to post-1972 activity. None of the affidavits establish the frequency or continuous nature of live entertainment and simply state the affiant observed or was aware of live music or other live entertainment occasionally at the premises. The defendants also submitted sales tax forms and copies of various city licenses and permits required, which they claim support continuous operation of the business. Most of the documentation submitted related to a period between 1989 and 1991.
On the other hand, the plaintiff neighbors contend that the property did not ipprovide live entertainment on a continuing basis prior to late 1991 or early 1992. Plaintiffs rely on the deposition testimony of the defendant club owners as well as the affidavits of several neighbors.
Based on the evidence submitted, we conclude that live entertainment was not a continuous aspect of the club's operation. The conduct of live entertainment at the property was sporadic or intermittent at best. Under these circumstances, we are led to conclude that the use of the property did not establish a nonconforming use for live entertainment.
Having so concluded, we affirm the effect of the trial judge's ruling reversing the decision of the Board of Zoning Adjustments and deny the application for nonconforming use status.
AFFIRMED.
NOTES
[1] Art. 927. Objections raised by peremptory exception

A. The objections which may be raised through the peremptory exception include but are not limited to the following:
(1) Prescription.
(2) Res judicata.
(3) Nonjoinder of a party under Articles 641 and 642.
(4) No cause of action.
(5) No right of action, or no interest in the plaintiff to institute suit.
B. The court cannot supply the objections of prescription and res judicata, which must be specially pleaded. The nonjoinder of a party, or the failure to disclose a cause of action or a right or interest in the plaintiff to institute the suit, may be noticed by either the trial or appellate court of its own motion.
[2] In their Second Supplemental and Amended Petition, the objection of res judicata was pleaded in paragraph 23, which reads as follows:

"The decision of the Department of Safety and Permits and the Board of Zoning Adjustments are illegal because 1226 Barracks Street never enjoyed nonconforming use status for the conduct of commercial live entertainment and, if it ever did, said status was lost through abandonment and by the failure of Arriola and/or Robertson to appeal two previous denials of such status in 1992 and 1993 by the Department of Safety and Permits, which denials became binding final (sic), res judicata, and conclusive when they remained unchallenged and unappealed."
[3] The creation and function of the Department of Safety and Permits is provided for in the Charter of the City of New Orleans in Article IV, Chapter 7, Section 4-701. et seq. Section 4-702 sets forth that the Director will administer and enforce zoning and building code ordinances, as well as all state and municipal laws and regulations under which permits are required and to issue permits in connection with its responsibilities. It is to receive applications for permits and to issue the permit if it is approved or notify the applicant in writing of any refusal and the reason therefor. The agency is authorized to make inspections, tests or examinations and either revoke, suspend or cancel any permit which has been violated or has been wrongfully issued.
[4] La. R.S. 9:5625 provides:

A. All actions civil or criminal, created by statute, ordinance or otherwise, except those actions created for the purpose of amortization of nonconforming signs and billboards enacted in conformity with the provisions of R.S. 33:4722, which may be brought by parishes, municipalities or their instrumentalities or by any person, firm or corporation to require enforcement of and compliance with any zoning restriction, building restriction or subdivision regulation, imposed by any parish, municipality or their instrumentalities, and based upon the violation by any person, firm or corporation of such restriction or regulation, must be brought within two years from the first act constituting the commission of the violation; provided, that where a violation has existed for a period of two years prior to August 1, 1956, except those actions created for the purpose of amortization of nonconforming signs and billboards enacted in conformity with the provisions of R.S. 33:4722, the action must be brought within one year from and after August 1, 1956, and provided further that with reference to violations of use regulations all such actions, civil or criminal, except those actions created for the purpose of amortization of nonconforming signs and billboards in conformity with the provision of R.S. 33:4722, must be brought within two years from the date the parish, municipality and their properly authorized instrumentality or agency if such agency has been designated, first had been actually notified in writing of such violation. Except as relates to nonconforming signs and billboards, any prescription heretofore accrued by the passage of two years shall not be interrupted, disturbed or lost by operation of the provisions of this section.