745 So.2d 1259 (1999)
Jacob WEISLER and Dorothy Weisler
v.
BOARD OF ZONING ADJUSTMENTS and The City Of New Orleans.
No. 98-CA-3007.
Court of Appeal of Louisiana, Fourth Circuit.
November 17, 1999.
Rehearing Denied December 16, 1999.
*1260 Lawrence Martin, Assistant City Attorney, Evelyn F. Pugh, Deputy City Attorney, Deborah Wilson, Chief Deputy City Attorney, Avis Marie Russell, City Attorney, New Orleans, Louisiana, Counsel for Defendants-Appellees.
Robert E. Arceneaux, Barham and Arceneaux, New Orleans, Louisiana, and Douglas S. Draper, Deborah W. Fallis, Heller, Draper, Hayden & Horn, New Orleans, Louisiana, Counsel for Plaintiffs-Appellants.
Randy Opotowsky, Sally D. Fleming, Charles L. Stern, Steeg and O'Connor, L.L.C., New Orleans, Louisiana, Counsel for Intervenor-Appellee.
Court composed of Judge WILLIAM H. BYRNES III, Judge CHARLES R. JONES, Judge DENNIS R. BAGNERIS, Sr.
*1261 BYRNES, Judge.
Appellants, Jacob and Dorothy Weisler, applied to the Civil District Court for the Parish of Orleans for a writ of certiorari directed to the Board of Zoning Adjustments for the City of New Orleans (hereinafter referred to as "the Board"). The Weislers' sought review of a decision of the Board denying them nonconforming use status for the commercial purpose of conducting tours and parties for out-of-town tourists in a residentially zoned neighborhood. The trial court refused to reverse the Board. We affirm.
The Board classified the commercial use of the property as intermittent and as such it did not qualify for nonconforming status. A legal nonconforming use is designed to protect those uses which were established before the enactment of a restrictive zoning regulation. Humphrey v. Robertson, 97-1742, p. 8 (La. App. 4 Cir. 3/11/98); 709 So.2d 333, 337. A legal nonconforming use is one which was lawful prior to the enactment of a particular zoning regulation and which is continued after the effective date of the regulation, although the continued use violates the new zoning restrictions for the district in which the property is situated. Id. Since a nonconforming use is inconsistent with the purpose of zoning ordinances, decisions regarding such status should be viewed narrowly with all doubt resolved against continuation or expansion of the nonconforming use. Id. at p. 8, 337. Brown v. City of New Orleans, 560 So.2d 983 (La.App. 4 Cir.1990), writ denied 566 So.2d 378. This principle should not be confused with the principle that a zoning ordinance, being in derogation of the rights of private ownership, must be construed, when subject to more than one reasonable interpretation, according to the interpretation which allows the least restricted use of the property. City of New Orleans v. Elms, 566 So.2d 626 (La.1990). In the instant case there is no question that the use of the Weisler residence does not conform to current zoning regulations. Therefore, we are dealing with the principles set forth in Humphrey, and not the principle set forth in Elms regarding the interpretation of zoning regulations.
It is uncontested that the property in question, 2915 Chestnut St., is the Weislers' residence in the middle of the Garden District. In Humphrey, supra, this Court emphasized that the nonconforming activity must be "continuous," noting that:
None of the affidavits establish the frequency or continuous nature of live entertainment and simply state the affiant observed or was aware of live music or other entertainment occasionally at the premises.
Id., p.9, 709 So.2d at 338.
The affidavit[1] of New Orleans Police Officer Rossie Wayne Lambert states that in 1968 and 1969 he "worked at least a dozen paid details for the Weislers" at commercial "pay-parties." We will assume that the Board and the trial court read this affidavit to mean that during those two years Officer Lambert worked an average of six parties per year for a total of twelve parties for the two year period or approximately one every two months. Officer Lambert's affidavit does not state that he has knowledge of any other functions at the Weisler residence during that period of time. It is uncontested that during this period of time the Weislers continued to occupy the property as their personal residence. There is no evidence that the property was dedicated to commercial use as opposed to being a dedicated residence subject to occasional, intermittent commercial use. As a matter of law, we do not consider such use to be sufficiently continuous or consistent to qualify for nonconforming status.
*1262 The affidavit of Officer William J. Trepagnier adds nothing material to that of Officer Lambert. Officer Trepagnier's affidavit states that from 1968 through 1979 he worked at least four paid details per year at commercial "pay-parties." He does not state that the four details he worked in 1968 and 1969 were in addition to those worked by Officer Lambert. The four parties per year worked by Officer Trepagnier could easily have been among the approximately six per year worked by officer Lambert during the same time period. The burden is on the Weislers' to establish the existence of the non-conforming usage Therefore, we cannot assume without proof that the parties attended by Officer Trepagnier in 1968 and 1969 were in addition to those attended by Officer Lambert. Nor could either the Board or the trial court make such an assumption based on the record before us. Officer Trepagnier's affidavit establishes no greater commercial usage than was attested to by Officer Lambert's affidavit which we have already found to be insufficient.
For the years 1970 through 1979, Officer Trapagnier's affidavit establishes nothing more than that the Weislers had commercial events at their property an average of perhaps once every three months. Again, it is uncontested that the Weislers continued to occupy the property as their personal residence during this time. There is no evidence in the record that during those years the Weislers set aside or dedicated any portion of the residence for commercial purposes. As a matter of law we find that such usage is not sufficiently continuous or consistent to qualify for legally nonconforming status, i.e., we agree with the Board that and the trial court that the use was intermittent.
This Court is of the opinion that the concept of continuousness has always been implicit in the concept of nonconforming use. If this were not the case then any isolated usage would confer nonconforming status. But common sense alone tells us that every nonconforming use does not confer nonconforming use status. In Humphrey, supra, this Court found that even when the intermittent use was accompanied by the payment of sales taxes and the acquisition of licenses and permits, it was not sufficient to establish nonconforming use status. Id., 709 So.2d at 338. In the instant case there is no evidence that the Weislers ever paid any sales taxes or acquired any of the required permits and licenses.
We acknowledge that the facts of City of New Orleans v. Elms, 566 So.2d 626 (La. 1990) are very close to those of the instant case. In Elms the owner of a mansion on St. Charles Ave. testified that she rented the residence out five or six times per year between 1969 to 1983 for parties or receptions. The trial court found that the property had been used "on a regular and consistent basis." Elms at 628. The effect of the Elms decision was to sustain this finding, in spite of the fact that elsewhere in the Elms opinion the court refers to "the occasional commercial leasing of the Elms House ..." Emphasis added. Id., at 629.
We agree that "regular and consistent" use is at least one reasonable standard by which nonconforming use may be judged and established. But implicit in the concepts of "regular," "consistent," and "use" is the concept of some degree of consistency and continuity. Carried to its logical conclusion, the leasing of a residence for an annual reception on the same date every year would literally be "regular and consistent" but it should not be enough to establish nonconforming use.
There is no discussion in Elms or in any of the authorities cited in Elms of how much and what type of use is sufficient to establish nonconforming status. Nor was there any discussion of what is meant by "regular and consistent." We infer from the Elms decision that the five or six receptions per year upon which the nonconforming status was based did not occur on anything like what would normally be considered a regular and consistent basis *1263 according to the common understanding of the words which imply some sense of a pattern or predictability, e.g., Monday through Friday, or, as would be more in line with the low level of nonconforming activity found in the record of the instant case, the third Tuesday of every second month. We proceed based on the assumption that were the Supreme Court to revisit Elms today, shifting its focus from the question of notice[2] to an analysis of the concepts of regular use, consistent use, frequent use, continuous use, and sufficiency of use as opposed to intermittent use, casual use, and occasional use, the Supreme Court would reach a different conclusion in Elms, or it would at least reach the same conclusion this Court now reaches in the instant case. None of the parties to the Elms case raised the issue of "occasional" versus "regular and consistent." The Elms court was never called upon to reconcile these antithetical concepts. We believe that had the litigants raised this issue the Elms court would have resolved it in the same manner as this Court has chosen to do in this opinion.
Article 13, § 13.6 of the Comprehensive Zoning Ordinance of the City of New Orleans, has since 1970 provided in pertinent part that:
The casual, intermittent, temporary, or illegal use of land or buildings shall not be sufficient to establish[3] the existence of a nonconforming use....
The Weislers argue that because they had established a nonconforming use prior to 1970 this provision in the zoning ordinance does not apply to them.[4] However, we find that this provision in the Zoning Ordinance is merely declarative of the law as it existed at that time and as it has continued to be recognized by this Court in Humphrey v. Robertson, supra.
We recognize that a single property may have multiple uses and that it is possible to operate a business out of a home. We merely suggest that where all or a portion of a property is or is not set aside or dedicated to a different use this dedication of usage or lack thereof may in itself be considered as a factor in establishing the "continuous" versus the "intermittent" nature of the usage.
What constitutes sufficient usage to establish nonconforming status may vary with the facts of each case. We can see an argument that where a particular property is dedicated to the nonconforming use it may require a lower level of daily activity to establish such usage. For example, had the Weislers' abandoned their home in whole or in part as a residence and dedicated it in whole or in part to commercial receptions with appropriate permanent commercial signage designating it as such, there would be a stronger argument that the commercial "use" of the property continued in between receptions just as we continue to think of a property operated as a bank as still being used as a bank even when it closes at night or on weekends and holidays. On the other hand, where, as in the instant case, it is uncontested that the property is dedicated to residential use by the Weisler's and is only incidentally used for receptions, there is nothing to maintain the continuity of reception usage in the many long weeks that the Board and the trial court implicitly and reasonably found elapsed between receptions. There is nothing in the record to suggest that any portion of the Weisler's residence was set aside or dedicated to reception use. In other words, had the Weislers shown that their residence was a dedicated, designated commercial reception hall, a better arguments *1264 could be made regarding the consistency of use. Moreover, this analysis is consistent with the principle expressed by the Supreme Court in Redfearn v. Creppel, 455 So.2d 1356, 1358-1359 (La.1984):
The permitted continuation of a nonconforming use is designed to avoid the hardship, injustice and doubtful constitutionality of compelling the immediate removal of objectionable buildings and uses already in the area.
The decision reached by this Court in this opinion allows the Weislers to continue the residential use of their property as they have always done, does not require them to alter the normal daily use of the property, requires them to neither remove nor alter any structures, does not require them to discharge any regular employees, and does not require them to cease any daily or continuous operations. In short, we find the Weislers situation does not suggest the kind of hardship and injustice that the concept of legal nonconforming use was designed to alleviate.
Decisions of the Board of Zoning Adjustments are afforded a presumption of validity and a reviewing court should not merely substitute its own judgment for that of the Board, unless there is a clear showing that the Board was arbitrary and capricious or abused its discretion, or the decision is manifestly erroneous in view of substantial evidence in the record. Elysian Fields, Inc. v. St. Martin, 600 So.2d 69, 72 (La.App. 4 Cir.1992). Applying this standard we find no basis for reversing the judgment of the trial court sustaining the decision of the board of zoning adjustments. Accordingly, the judgment is affirmed.
AFFIRMED.
NOTES
[1] Appellees object to the form of this affidavit. As we find that the affidavit fails to support the position for which it is offered by the Weislers, we need not weigh its defects as to form.
[2] "The key essential element of proof pertinent to this case was the `knowledge of such violation' by the City." Elms at 630.
[3] By amendment in 1990 the words "and maintain" were added at this point.
[4] As we categorize the commercial use of the Weisler residence as casual and intermittent, we need not concern ourselves with the effective date of the requirements in the Zoning Ordinance related to the posting of operating hours, etc.