| t PLOTKIN, Judge.
Plaintiff, Flex Enterprises, Inc., appeals a trial court judgment upholding a decision of Paul May, the New Orleans Director of Safety and Permits (“Director May”), and the New Orleans Board of Zoning Adjustments (“BZA”), which decisions denied Flex Enterprises’ application for a building permit and application for an occupational license allowing it to renovate and operate a “health club” at 700 Baronne Street in the City of New Orleans. For the reasons explained below, we reverse the trial court judgment and grant mandamus directing Director May and the BZA to issue the requested building permit and occupational license.
Facts
The zoning classification for 700 Bar-onne Street, the property in question in this case, is CBD-7, Central Business District; that zoning classification has been in effect at all times pertinent to the instant appeal. Operation of a business that qualifies as a “health club” under the following definition, set forth in the ^Comprehensive Zoning Ordinance (“CZO”) for the City of New Orleans, is a permitted use for property zoned CBD-7:
An establishment containing a minimum of 4,000 square feet of floor area, which provides a service to the public involving an exercise program; aerobics; martial arts; spas, and/or hot tubs; pools; gymnastics. Such establishment must provide modern exercise equipment in good operation, which equipment shall be subject to inspection by the Department of Safety and Permits and/or Health Department of the City or State. If massage therapy is offered on the premises, the masseuse must be licensed in accordance with Chapter 35-A-l, massage therapy, of the City Code (Ordinance 828 M.C.S.). The establishment may provide a pool or hot tub which shall be subject to inspection by the Department of Health of the City and/or State. The type of clientele (i.e., men only; men and women; or family) and the hours of operation must be posted in an obvious place in the entry way of the establishment; the fees must be indicated upon request. For the purpose of this definition, a spa, exercise club, gymnasium, public pool or hot tub, martial arts school, aerobics club, or gymnastics school shall be considered a health club.
City of New Orleans Comprehensive Zoning Ordinance, Ordinance 4264 M.C.S., as Amended and Reenacted by Ordinance 16,976 M.C.S., As Amended.
The property located at 700 Baronne Street was acquired by Martin Benson on November 17, 1979, and later transferred to the Martin Benson Trust. During the entire time the property was owned by Mr. Benson and Martin Benson Trust, an occupational license issued and renewed by the City allowed the operation of a health club on the property. However, the business closed on June 1, 1998, after Mr. Benson died. On February 5, 1999, Flex Enterprises purchased the property from the Martin Benson Trust.
After Flex Enterprises acquired the property, renovations began and exercise equipment was ordered. However, because Flex Enterprises had failed to secure a building permit from the City of New Orleans allowing the renovations, a “Stop |;jWork” order was issued. Thereafter, Flex Enterprises applied for an occupational license to operate a health club, as well as a building permit. Following an inspection of the property, Director May denied the application in writing, citing two reasons for his decision:
1. His determination “that the property has not maintained legal non-conforming status because the use was vacant for a period of 6 consecutive months.”
*1148 2. His determination, after review of the “intended use and as designed,” that “the establishment cannot be classified as a health club.”
Flex Enterprises appealed Director May’s decision to the BZA. At a July 12, 1999, hearing before the BZA, Flex Enterprises challenged both of Director May’s determinations stated above. The attorney for Flex Enterprises testified at the hearing, as did Director May and a number of citizens, neighbors of 700 Baronne Street, all of whom opposed the issuance of the occupational license and building permit. Mr. May testified as follows:
Um, they.applied for an occupational license for a health club. At the time they applied for it, it [sic] raised two (2) issues relative to the zoning laws. One, was it simply a change of owners. unintelligible.legal non-conforming use, and the license could be approved. After meeting with their attorney, Mr. Hand, and the evidence he submitted, we took the position that this was not a question of non-conforming status. The Martin Benson Trust or the Trust that was created had full control of the property and they could have sold it, leased it or operated the business. And it had indeed been vacant for more than six (6) months. So we felt that the non-conforming use issue or the vacancy issue was not relevant, it is already expired. So now the question was is this a legitimate health club under the provisions of the zoning code.
On our inspection of the building they are correct, there was no exercise equipment, they told me it was on order from, I believe from Arizona or someplace and it was coming,.unintelligible .... so you can bring it in the building, but do not use and occupy the building. I have not been back there to see the exercise equipment. What I did receive from their attorney was a set of plans for this four-story building. The first floor, as I recall, was basically an office in an entryway.
[[Image here]]
14Second floor was basically some hot tubs and both of the walls were with showers, I mean lockers. On the third and fourth floor you had 52 cubicles that were approximately 5 feet by 10 feet or 6 feet by 11 feet, very small cubicles with a little pallet on it and a canvas covered mattress on the pallet.
Our reservation about calling it a health club is that in the health clubs that I’ve approved over the years and the ones I’ve inspected in the city ..., I have never seen anything like the 52 little cubicles, um, which I felt was just not part of a typical bonafide health club.
The exercise equipment, my concern right now would be what percentage is devoted to the exercise equipment, um, since it was not there at the time of inspection, I cannot say if it was 10 percent of the building, 5 percent, or 50 percent. But if you’re familiar with any health club, it’s almost 80 to 90 percent of the health club facility.
So I would be very concerned about the breakdown of the actual use of the building. So we’ve denied it as a health club as presently laid out, presented to us, um, and we do not feel they’re entitled to an occupational license. That’s our decision at this time.
Most of the opposition from citizens was based on complaints about the business previously operated at the same location by Mr. Benson and the Martin Benson Trust. Also speaking at some length was Attorney John Rawls, who appeared as an officer of the court and “for informational purposes only.” Mr. Rawls testified that the business run by Mr. Benson and Martin Benson Trust was not a health club at all, but a “gay bathhouse,” which he said was “clearly a spa as defined by our zoning ordinances.”
In response to questions and to the statements made by Director May, Walter Fisher, appearing at the hearing on behalf of Flex Enterprises, stated that the build *1149 ing in question contains 11,000 square feet, 6,000 of which would be “related to health care as far as we have the steamroom, we have the sauna, we have the jacuzzi, the shower areas, all of the weight equipment.” Moreover, he testified that the establishment would include a theater to be used for sporting events, as well as an aerobics room and a cardiovascular room. About 4,200 feet would be devoted to “exercising machines,”. Mr. Fisher stated. Concerning the cubicles, Mr. Fisher | .ytestified that they were dressing rooms for people who do not like to dress in front of others, and that the mats were provided so club members would have a place to sit down in the dressing rooms.
Following the hearing, the BZA denied Flex Enterprises’ appeal of Director May’s decision, but did not issue any findings or reasons. Thereafter, Flex Enterprises filed a “PETITION FOR JUDICIAL REVIEW OF AN ADMINISTRATIVE DECISION, FOR DECLARATORY JUDGMENT, FOR MANDAMUS TO ISSUE A BUILDING PERMIT AND OCCUPATIONAL LICENSE AND FOR ISSUANCE OF A WRIT OF CERTIORARI DIRECTED TO THE BOARD OF ZONING ADJUSTMENTS,” naming as defendants the City of New Orleans, Director May, and the BZA. Flex Enterprises asserted in its petition that the opposition evidence presented before the BZA was irrelevant and inflammatory, and that the only relevant evidence presented was its own evidence indicating that the proposed establishment qualifies as a “health club” under the definition set forth in the CZO.
The record contains an “ORDER ISSUING WRIT OF CERTIORARI DIRECTED TO THE BOARD OF ZONING ADJUSTMENTS,” which was signed by Civil District Court (“CDC”) Judge Nadine Ramsey on August 13, 1999. However, the record also contains a November 10, 1999 judgment whereby CDC Judge Robin Giarrusso denied the writ of mandamus filed by Flex Enterprises, “finding that the City’s decision was not arbitrary and capricious.” Despite the fact that Flex Enterprises asserted in its petition that proper disposition of this controversy would necessitate a hearing and despite the fact the record contains a signed order granting a writ of certiorari, the record is void of any evidence of a hearing before the trial court. Although the record contains a request for written | (¡reasons for judgment filed by Flex Enterprises, the record on appeal contains no reasons for judgment. However, written reasons for judgment are attached to Flex Enterprises’ brief to this court. In those reasons for judgment, Judge Giarrusso stated that her court would not substitute its judgment for that of the BZA because she found no evidence that the BZA acted arbitrarily and capriciously. Flex Enterprises appeals the judgment issued by Judge Giarrusso. Standard of review
Decisions of the BZA are afforded a presumption of validity. Weisler v. Board of Zoning Adjustments, 98-3007, p. 12 (La.App. 4 Cir. 11/17/99), 745 So.2d 1259, 1264, writ denied, 2000-0142 (La.3/17/00), 757 So.2d 641. However, the presumption is rebuttable. Curran v. Board of Zoning Adjustments Through Mason, 580 So.2d 417, 418 (La.App. 4 Cir.), writ denied, 584 So.2d 679 (La.1991). Thus, the “reviewing court must first determine or establish whether or not the decision of the board or administrative agency is supported by substantial and competent evidence adduced in the proceedings which are regular and orderly.” Id., citing Gertler v. the City of New Orleans, 346 So.2d 228, 233 (La.App. 4 Cir.1977.) Accordingly, “a reviewing court should not merely substitute its own judgment for that of the Board, unless there is a clear showing that the Board was arbitrary and capricious or abused its discretion, or the decision is manifestly erroneous in view of substantial evidence in the record.” Weisler, 98-3007 at p. 12, 745 So.2d 1259, 1264.
|7Entitlement to occupational license and building permit
Although it is never expressly stated in the record, we presume that the *1150 denial of the building permit is based, like the denial of the occupational license, on the finding that the establishment proposed by Flex Enterprises does not qualify as a “health club.” The only record explanation for that decision is Director May’s two determinations: (1) that the “non-conforming use” of the property had been lost, and (2) that the establishment proposed by Flex Enterprises did not qualify as a “health club.”
Concerning Director May’s determination relative to “non-conforming” use, § 13.2.1 of the CZO provides that a nonconforming use, meaning the use of a property for something other than a permitted use under the appropriate zoning classification, is lost if the property “becomes and remains vacant for a continuous period of six (6) calendar months.” Director May’s decision implies that the establishment operated by Mr. Benson and the Martin Benson Trust at 700 Baronne Street was a “non-conforming use” of the property, which was lost when the establishment closed on June 1, 1998, and stayed closed for a greater than six-month period.
However, the record clearly reveals that the establishment operated by Mr. Benson and Martin Benson Trust at 700 Baronne Street held an occupational license as a “health club,” which is a permitted use for property zoned CBD 7. The City Attorney admitted that fact in oral argument before this court. Thus, we find that Director May’s determination that the non-conforming use was lost by six-months vacancy was arbitrary and capricious, as was the BZA’s denial of Flex Enterprises’ appeal on that issue.
|sThe only other question before this court is whether Director May and the BZA were arbitrary and capricious in finding on the basis of the record evidence that the establishment proposed by Flex Enterprises does not qualify as a “health club” under the New Orleans CZO. The definition of “health club” in the CZO (quoted above in its entirety) is extremely broad. The only minimal requirements are as follows:
1. That the establishment contain a minimum of 4,000 square feet of floor area
2. That the establishment provide “a service to the public involving an exercise program; aerobics; martial arts; spas; and/or hot tubs; pools; gymnastics.”
3. That the establishment provide modern exercise equipment in good operation.
4. That the exercise equipment be subject to inspection by the Department of Safety and Permits and/or Health Department of the City or State.
5. That any masseuse offering massage therapy at the establishment be licensed in accordance with the City Code.
6. That any pool or hot tub provided by the establishment be subject to inspection by the Department of Health of the City and/or State.
7. That a sign designating the type of clientele allowed and the hours of operation be posted in an “obvious place in the entryway of the establishment.”
8. That fees be indicated “upon request.”
The record evidence in this case proves that the establishment proposed by Flex Enterprises qualifies as a “health club” under the broad definition established by the New Orleans CZO. Mr. Fisher testified that the establishment contains 11,000 square feet, far more than the 4,000 required. Moreover, Mr. Fisher’s testimony indicates that the establishment will provide spas and/or hot tubs, as well as modern exercise equipment in good operation. After considering all the record | ^evidence on that issue, we find that Director May and the BZA were clearly arbitrary and capricious in their conclusion that the establishment proposed by Flex Enterprises does not qualify as a “health club” under *1151 the definition established by the New Orleans CZO.
In fact, the reasons stated by Director May for denying the license and permit at the BZA hearing address issues entirely outside the definition of “health club” in the CZO. Director May expressed his concern that the exercise equipment and other items found in a “bonafide” health club would not represent a major percentage of the establishment. However, the definition of “health club” found in the CZO does not require that a certain percentage of the establishment be used for exercise machines and equipment. Moreover, Director May expressed his concern that the 52 “cubicles” are not common in a “bona-fide” health club. Again, the definition in the CZO does not exclude any types of spaces because they are inappropriate for “health clubs.”
Attorney John Rawls, who testified in opposition to Flex Enterprises’ applications at the BZA hearing, filed an amicus curiae brief in this court, through which he sought to educate this court concerning the true nature of the “health clubs” run by Flex Enterprises throughout the country. In his brief, he referred this court to Flex Enterprises’ website, and attached copies of advertisements placed by Flex Enterprises in other cites. Mr. Rawls’ intent in supplying the court with these materials is to convince this court that his characterization of the proposed establishment in New Orleans as a “gay bathhouse” is correct. Mr. Rawls asserted in his amicus brief that the establishment proposed by Flex Enterprises in New Orleans is a “spa,” and that a moratorium has been imposed on spas in the New Orleans Central Business District. However, no record evidence indicates that [insuch a moratorium exists; moreover, a “spa” is specifically classified as a “health club” under the CZO definition, meaning that a “spa” is a permitted use for property zoned CBD-7.
Apparently for the first time, the City Attorney suggested during oral argument before this court that Director May properly determined that the proposed establishment did not meet the CZO definition of a “health club” because no exercise equipment was present at the time he inspected the property. This argument has not previously been advanced at any time on the record of this case. Moreover, the City Attorney admitted that Director May met with the attorney for Flex Enterprises and gave permission for health equipment to be delivered to the property, despite the existence of a “Stop Work” order on the property. During that meeting, Director May reviewed invoices for exercise equipment that had been ordered, the City Attorney admitted-. Moreover, as previously noted, Mr. Fisher testified at the BZA hearing that approximately 4,200 feet of the establishment proposed by Flex Enterprises would be devoted to “exercising machines.” That amount of space is more than the minimum requirement for an entire health club, under the express terns of the CZO definition of “health club.” The City Attorney suggested that Flex Enterprises should have requested that Director May reinspect the establishment after the delivery of the exercise equipment. However, Director May never mentioned the absence of the exercise equipment as his reason for denying the application either in his written reasons or in his testimony before the BZA. Accordingly, we find no merit in this argument.
This appeal involves a zoning issue, not issues related to the legality or propriety of the activities to be conducted in the proposed establishment. Whatever the true nature of the proposed establishment, the fact is that the record Inevidence indicates that the establishment qualifies as a “health club” under the New Orleans CZO, as it now reads. “[Bjeeause zoning ordinances are in derogation of a citizen’s constitutionally protected right to own and use his property, they must be construed, when subject to more than one reasonable interpretation, according to the interpretation which allows the least restricted use of the property.” Palm-Air Civic Associa *1152 tion, Inc. v. Syncor International, Corp., 97-1485, p. 7 (La.App. 4 Cir. 3/4/98), 709 So.2d 258, 262. This is, in fact, “the first principle of zoning law.” Id. In the instant case, Director May and the BZA have violated that principle by seeking to impose additional requirements that are not expressed in the zoning ordinance, as well as limitations that are not expressed therein. If certain establishments are to be prohibited in an area either because they include certain items that seem inconsistent to zoning officials with the permitted uses of the zoning classification or because a certain percentage of the establishment is not devoted to a particular purpose, such rules must be clearly set forth in the official zoning ordinance, not imposed on a case-by-case basis.
Conclusion
Accordingly, we find that that the denial of the building permit and occupational license requested by Flex Enterprises was arbitrary and capricious, and reverse the trial court judgment, as well as the determinations of Director May and the BZA. Mandamus is granted, ordering Director May and the BZA to issue the building permit and occupational license requested by Flex Enterprises. All costs of this appeal are to be paid by the City of New Orleans.
REVERSED; MANDAMUS ISSUED.