1LEON A. CANNIZZARO, JR., Judge.
This case involves an appeal from the trial court’s decision to deny the relief requested by the plaintiffs, Barry Samuel and B. Samuel Company, Inc. (collectively, the “Samuels”). The Samuels applied to the district court for a writ of certiorari to review a decision of the City of New Orleans Board of Zoning Adjustments (the “Board”) granting Xavier University (“Xavier”) certain variances from the Comprehensive Zoning Ordinance of the City of New Orleans (the “Comprehensive Zoning Ordinance”). The Samuels sought to have the Board’s decision reversed. The district court declined to modify the Board’s decision, and the Samuels are now appealing to this Court.
STATEMENT OF FACTS AND PROCEDURAL HISTORY
Xavier is a university located in the City of New Orleans in an area zoned as a light industrial district. Because of a lack of student housing on its campus, Xavier is building[1] a seven-story dormitory (the “Dormitory”) to house a portion of its student body. The Dormitory complies with the requirements for a light ^industrial district except with respect to its height and its floor area ratio[2]. The maximum floor area ratio for buildings in a light industrial district is 1.00, and the height limitation for such buildings is 75 feet. Comprehensive Zoning Ordinance Article 7, Section 7.3.7, Table 7-C.
Xavier filed an application with the Board for a variance in these two requirements. The application requested a ten-foot height variance for the Dormitory and a variance of the floor area ratio from a ratio of 1.00 to a ratio of 4.00.
The Board’s staff report recommended that the Board grant both of the variances that were requested. A public hearing was held on the proposed variances. There was no opposition to the variances, and the Board approved them unanimously.
*1077 The Samuels filed suit challenging the approval of the variances, because they were not given notice of the public hearing. Xavier consented to having a second public hearing on the request for the variances. At the second hearing the Samuels objected to the variances, but the Board again approved them unanimously.
The Samuels appealed the Board’s decision to the district court and applied for a writ of certiorari to review the Board’s action. The district court granted the writ of certiorari, a hearing was held, and a judgment affirming the Board’s approval of the variances was rendered. The Sam-uels are now appealing that judgment.
| ^STANDARD OF REVIEW
In Elysian Fields, Inc. v. St. Martin, 600 So.2d 69 (La.App. 4th Cir.1992), which involved a writ of certiorari requesting a review of the Board’s denial of a zoning variance, this Court stated that “[t]he purpose of certiorari is to review the findings of boards and quasi-judicial tribunals to determine whether jurisdiction has been exceeded, or to decide if the evidence establishes a legal and substantial basis for the Board’s decision.” 600 So.2d at 72 (citing Gertler v. City of New Orleans, 346 So.2d 228 (La.App. 4th Cir.1977)).
This Court further discussed the standard of review to be applied to decisions of the Board in Flex Enterprises, Inc. v. City of New Orleans, 2000-0815 (La.App. 4 Cir. 2/14/01), 780 So.2d 1145. In that case, this Court stated that there is a rebuttable presumption that the decisions of the Board are valid. Also, the reviewing court must determine whether the Board’s decision is supported by “substantial and competent evidence” presented at the proceedings. Id. at p. 6, 780 So.2d at 1149. Finally, a reviewing court must not substitute its judgment for that of the Board unless there is a showing that the Board acted arbitrarily or capriciously, the Board abused its discretion, or the Board rendered a decision that was manifestly erroneous in light of substantial evidence in the record. Id. See also, e.g., King v. Caddo Parish Commission, 97-1873 (La.10/20/98), 719 So.2d 410; French Quarter Citizens for Preservation of Residential Quality, Inc. v. New Orleans City Planning Commission, 99-2154 (La.App. 4 Cir. 4/12/00), 763 So.2d 17.
^DISCUSSION
Standard for Variances
Comprehensive Zoning Ordinance Article 14, Section 14.6.1 states that “[t]he purpose of the variance procedure is to afford an applicant relief from the requirements of the letter of the Zoning Ordinance when unnecessary hardship or practical difficulty exists.” Comprehensive Zoning Ordinance Article 14, Section 14.6.2 specifies the only instances in which a variance may be granted. Pursuant to section 14.6.2, the Board may grant a variance to allow a floor area ratio greater than that permitted,[3] but variances involving height requirements are not permitted by section 14.6.2. Exemptions from height requirements are addressed in another section of the Comprehensive Zoning Ordinance,[4] and, unlike the variance provisions of the ordinance, the section allowing height exemptions does not require that a specific list of criteria be met.
*1078 Comprehensive Zoning Ordinance Article 14, Section 14.6.4, which governs a request for a floor area ratio variance, provides that the Board shall not authorize a variance from the requirements of the Comprehensive Zoning Ordinance unless the Board has found that the nine specific criteria set forth in section 14.6.4 have all been met based upon the evidence presented to the Board. The criteria are as follows:
1. Special conditions and circumstances exist which are peculiar to the land, structure, or building involved and which are not applicable to other lands, structures, or buddings in the same zoning district.
2. Literal interpretation of the provisions of this Ordinance would deprive the applicant of rights commonly enjoyed |Bby other properties in the same district under the terms of this Ordinance.
3. The special conditions and circumstances do not result from the actions of the applicant or any other person who may have or had interest in the property.
4. Granting the variance requested will not confer on the applicant any special privilege which is denied by this Ordinance to other lands, structures, or buildings in the same district or similarly situated.
5. The variance, if granted, will not alter the essential character of the locality.
6. Strict adherence to the regulation for the property would result in a demonstrable hardship upon the owner, as distinguished from mere inconvenience.
7. The purpose of the variance is not based exclusively upon a desire to serve the convenience or profit of the property owner or other interested party(s) [sic].
8. The granting of the variance will not be detrimental to the public welfare or injurious to other property or improvements in the neighborhood in which the property is located.
9. The proposed variance will not impair an adequate supply of light and air to adjacent property, or increase substantially the congestion in the public street, or increase the danger of fire, or endanger the public safety.
Comprehensive Zoning Ordinance Article 14, Section 14.6.4, (l)-(9).
In Curran v. Board of Zoning Adjustments Through Mason, 580 So.2d 417 (La.App. 4th Cir.1991), this Court stated the standard the Board must use in determining whether a variance may be granted:
The first question which must be answered is: Did the owner seeking the variance present evidence that he would be subjected to hardship, rather than inconvenience or economic disadvantage if he was not granted the variance? If answered in the affirmative, the second question must follow: Did the owner seeking the variance present evidence to the board, or did the board adduce on the record, facts which satisfy all of the IfiCriteria set out in Sec. 15, 2.3, (a)-(i) [now codified as Article 14, Section 14.6.4, (l)-(9) ]?
580 So.2d at 419 (emphasis in original).
In determining whether the Board was arbitrary or capricious or abused its discretion in granting a variance, the reviewing court must answer the two questions posed in the Curran case. The questions must be answered affirmatively for the court to conclude that the variance was properly granted.
*1079 Height Variance
According to the record before us, Xavier sought a 10 foot variance for the height of the Dormitory. Xavier requested that the 75 foot limit set forth in the Zoning Ordinance for buildings in light industrial districts be increased to 85 feet for the Dormitory. The purpose of the increase was to accommodate a green gabled roof that has become identified with the buildings on the Xavier campus as a symbol of the university. Xavier representatives testified at the hearing before the Board that, in fact, the roof would actually occupy only 4.5 feet of extra height rather than 10 feet.
The Board is prohibited from granting a height variance under Comprehensive Zoning Ordinance Article 14, Section 14.6.2, which permits variances only in certain instances, none of which apply to the height limits on buildings. The Board does have the authority, however, to grant a special exception under Comprehensive Zoning Ordinance Article 14, Section 14.7.5, which permits special height exceptions in certain instances. That section provides in relevant part as follows:
The Board may grant an exception to the height regulations ... so as to relieve practical difficulties or particular hardships in cases when and where ... by reason of ... other extraordinary and exceptional | situations or conditions of such property, the strict application of such regulation or restriction would result in peculiar and exceptional practical hardship upon the owner of such property.
The record in this case does not permit us to review the Board’s reasoning in determining whether a special exception should be granted in the case of the Dormitory. The application for the variance sought by Xavier and the report of the Board’s staff are not in the record. The only evidence in the record is the testimony in the transcripts of the two public hearings that were held before the Board.
There is testimony in the transcripts to the effect that the additional height created by the trademark green gabled roof will not have a substantial impact on the sunlight supplied to the Samuels’ property. The impact on the supply of sunlight to that property will be affected far more by the first 75 feet of the Dormitory than the last 4.5 feet. The 4.5 foot roof will be sloped and will, therefore, have less effect on the sunlight than the straight walls of the building.
La. R.S. 33:4727(C)(3)(c), however, gives the Board the authority to provide relief from the strict letter of Comprehensive Zoning Ordinance if the relief will not violate the spirit of the ordinance. That statute provides:
(3) The board of adjustment shall have the following powers:
[[Image here]]
(c) In passing upon appeals[5], where there are practical difficulties or unnecessary hardships in the way of carrying out the strict letter of the ordinance, to vary or modify the application of any of the regulations or provisions of the ordinance relating to the use, construction, or alteration of buildings or structures or the use of land so that the spirit of the ordinance shall be observed, public safety and welfare secured, and substantial justice done.
See also French Quarter Citizens for Preservation of Residential Quality, Inc. v. New Orleans City Planning Commis *1080 sion, 99-2154 (La.App. 4 Cir. 4/12/00), 763 So.2d 17.
We find that pursuant to La. R.S. 33:4727(C)(3)(e) the Board had the authority to modify the strict letter of the height requirements of the Comprehensive Zoning Ordinance in connection with the Dormitory. Unlike the floor area ratio variance, the height exemption does not have to meet the nine criteria in Comprehensive Zoning Ordinance, Article 14, Section 14.6.4 that must be satisfied for variances to be granted. Therefore, even on the limited record before us, we can determine that the Board did not act arbitrarily or capriciously or abuse its discretion in modifying the application of the Comprehensive Zoning Ordinance’s height restrictions to the green gabled roof of the Dormitory. This is particularly true in view of the fact that ornamental towers and spires are exempted from the height limitations of the Comprehensive Zoning Ordinance under Article 15, Section 15.5.5. Adding an additional 4.5 feet to a seven-story building to achieve the objective of architectural harmony with other campus buildings and to permit the use of Xavier’s trademark type of roof does not violate the spirit of the ordinance’s height restriction.
Floor Area Ratio Variance
Comprehensive Zoning Ordinance Article 2, Section 2.2(79) defines floor area ratio as “[t]he floor area of a building or buildings on any lot divided by the area of the lot.” Xavier requested an increase in the permitted floor area ratio from 1.00 to 4.00.
To determine whether a variance for an increase in the floor area ratio was permissible under the Comprehensive Zoning Ordinance, we must first determine 13whether Xavier presented evidence to the Board that it would be subjected to “unnecessary hardship or practical difficulty” if it were not granted the variance. Comprehensive Zoning Ordinance Article 14, Section 14.6.1; Curran v. Board of Zoning Adjustments Through Mason, 580 So.2d 417 (La.App. 4th Cir.1991). This Court has made it clear that the test for whether a variance should be granted is “unusual hardship or difficulty.” Financial reasons, forfeiture of federal funds, or enlarging a business do not meet the test. See, e.g., Uptown Improvement Association v. Board of Zoning Adjustments of the City of New Orleans, 243 So.2d 345, 345-46 (La.App. 4th Cir.1971).
At the public hearing that was held before the Board, Xavier’s representatives stated that “Xavier has reached a point where it is absolutely imperative that they acquire and build a new dormitory to house the increasing student body.” The record does not reflect, however, that there was any evidence presented to the Board to support this contention or that the Board determined that this created a hardship within the meaning of Comprehensive Zoning Ordinance Article 14, Section 14.6.1.
The second inquiry we must make in determining whether the Board properly granted the floor area ratio variance is whether all of the requirements set forth in Comprehensive Zoning Ordinance Article 14, Section 14.6.4 were met. The requirements were not specifically addressed at the hearing before the Board, and there is no other evidence in the record[6] that Xavier addressed, or that the Board considered, each of the nine criteria required to be met by section 14.6.4. The Samuels, *1081 however, did present evidence at the hearing to show the traffic |1ftcongestion in the area and the decrease in the supply of sunlight to their property that would result from building the Dormitory.[7]
Based on the record before us, there is insufficient evidence for us to determine whether the Board properly considered the criteria required to be met by section 14.6.4. Xavier was required to present evidence to the Board, or the Board was required to adduce facts on the record, to show that all nine of the criteria set forth in section 14.6.4, (l)-(9) were met. Either this was not done, in which case the variance was not properly granted, or the record we have before us is incomplete. The district court did not furnish written reasons for her judgment. Therefore, we do not know the basis upon which she affirmed the Board’s action.
We also note that the argument was made that Xavier did not need a variance of the floor area ratio based on the provisions of Comprehensive Zoning Ordinance Article 15, Section 15.5.6(2). That section provides that the requirements for lot area per family do not apply to dormitories that are accessory to a permitted use and that have no cooking facilities in the individual rooms. We do not find this argument persuasive, however, because section 15.5.6(2) applies to lot area per family, not to floor area ratio. Lot area is “[t]he total horizontal area within the lot lines of the lot.” Comprehensive Zoning Ordinance, Article 2, Section 2.2(116). Therefore, the lot area per family is the minimum area required for each family unit occupying a particular lot. The fact that the lot area per family 1 ^ requirements of the ordinance do not apply to the Dormitory has no bearing on the floor area ratio requirements that do apply to it.
The Board’s Responsibilities
It is the responsibility of the Board to create a record upon which its decisions are made. In the instant case, the Board approved the variances requested by Xavier unanimously at two different public hearings, but it did not document in the record before us the basis upon which the approvals were given. There is no evidence in the record before us that the Board complied with its obligation to evaluate the variance request in accordance with the requirements of the Comprehensive Zoning Ordinance, particularly the requirements of section 14.6.4 of article 14.
If the Board did not evaluate Xavier’s request in accordance with section 14.6.2, it was derelict in its duties. If this is the case, the Board has done a grave disservice to Xavier, the Samuels, and the public. Xavier, in legal good faith, constructed the Dormitory after having been granted on two separate occasions the variances it requested. Furthermore, if the Board has not properly discharged its duties, the property rights of the Samuels may have been impinged, leaving the Samuels with no adequate remedy. It would be inequitable to require Xavier, which relied in good faith on the Board’s decision to grant the variances, to remove portions of the Dormitory. Finally, if the Board has not fulfilled its obligations in accordance with the applicable law, it has breached the public trust that has been granted to it.
The District Court’s Review
It is the district court’s duty to review the record of the proceedings of the Board to determine whether it has com *1082 plied with the applicable law in deciding | ^whether to grant or deny a zoning variance. If the Board has complied with the applicable law and has made a decision based on a finding of facts that is not arbitrary or capricious or an abuse of the Board’s discretion, the Board’s decision should be confirmed. If the Board abused its discretion either in failing to comply with applicable law or acted arbitrarily or capriciously in finding the facts upon which it based its decision, the district court should reverse the decision of the Board. Elysian Fields, Inc. v. St. Martin, 600 So.2d 69 (La.App. 4th Cir.1992). See also, e.g., Lake Forest, Inc. v. Board of Zoning Adjustments of City of New Orleans, 487 So.2d 133 (La.App. 4th Cir.1986); State ex rel. Pitts v. Board of Zoning Adjustments of City of New Orleans, 327 So.2d 140 (La.App. 4th Cir.1976); Uptown Improvement Association v. Board of Zoning Adjustments of City of New Orleans, 243 So.2d 345 (La.App. 4th Cir.1971).
In the instant case the record on appeal is insufficient for us to determine whether the Board’s decision with respect to the floor area variance was properly made or whether the Board’s decision was arbitrary, capricious, or an abuse of discretion, in which case it should be reversed. Therefore, the district court must review only the testimony, documents, and evidence that were presented to the Board at the hearing at which the Samuels were represented.[8]
La. R.S. 33:4727(E) sets forth the procedure to be followed by the district court when a party is aggrieved by a decision of the Board. Pursuant to that statute, if it appears to the district court that additional testimony is necessary for the proper disposition of the matter, the district court “may take additional evidence or 113appoint a referee to take such evidence as it may direct ... and report the same to the court with his finding of fact and conclusions of law, which shall constitute a part of the proceedings upon which the determination of the court shall be made.” La. R.S. 33:4727(E)(4). The district court may “reverse or confirm, wholly or in part, or may modify the decision brought up for review.” La. R.S. 33:4727(E)(5).
In the instant case, it may be necessary for the district court to obtain additional evidence before she can determine whether or not the decision of the Board was properly made with respect to the floor area ratio variance. See, e.g., Lakeshore Property Owners Association v. City of New Orleans, Zoning Board of Appeal and Adjustments, 481 So.2d 162, 166 (La.App. 4th Cir.1986), where this Court found that additional evidence was necessary, because “[t]he ‘hearing’ before the BZA [the Board] contains no evidence other than statements made by persons or their representatives who either opposed or supported the requested variance.” Accordingly, we will remand this case for further review by the district court.
CONCLUSION
Based on the foregoing, we hereby affirm the decision of the district court insofar as it confirms the Board’s decision to permit the height variance in the Dormitory, and we hereby vacate the decision of the district court insofar as it confirms the Board’s decision to grant a variance in the floor area ratio for the Dormitory. We further remand this case to the district court with instructions to determine, based on a complete record, whether or not the decision of the Board to grant the variance in the floor area ratio should be reversed, confirmed, or modified. In doing this, the district court should consider only the tes *1083 timony, documents, and evidence that were before the Board at the meeting at which the | uSamuels were represented to determine whether the action taken by the Board was proper.
AFFIRMED IN PART, VACATED IN PART, AND REMANDED.

. The construction of the Dormitory is now either complete or nearing completion.

. The floor area ratio is the floor area of a building or buildings on a lot divided by the area of the lot. Comprehensive Zoning Ordinance Article 2, Section 2.2(79).

. A floor area ratio variance may not be granted in the Central Business District, however.

. Height exemptions are addressed in Comprehensive Zoning Ordinance, Article 14, section 14.7.5, and they may be granted to "relieve practical difficulties or particular hardships.”

. This statute relates to appeals to the Board by persons aggrieved by the actions of officers, departments, boards, or bureaus of the municipality.

. There is a Return to Writ of Certiorari in the record that references a number of documents that may shed light on whether the Board considered the factors it is required to consider under section 14.6.4. Although these documents may have been available to the district court, they are not in the record before us, and we cannot review them.

. The transcript of the public hearing refers to a videotape showing the traffic congestion in the area of the Dormitory, but the videotape is not in the record. There is in the record, however, a diagram showing the effect the Dormitory will have on the sunlight that reaches the Samuels' property.

. The hearing was held on March 11, 2002.