EDWIN A. LOMBARD, Judge.
 

 | iAppellant, Audubon, L.L.C., defendant in this action in a matter from the City of New Orleans Board of Zoning Adjustments, appeals to this Court a final judgment by the Civil District Court reversing the decisions of the Board and ordering that all building permits for double dwelling use sought by appellant be revoked. For the reasons set forth below, we reverse the decision of the district court and restore the decision of the Board of Zoning Adjustments.
 

 Factual and Procedural History
 

 Audubon, L.L.C. is the owner of a residential property located at 624 Audubon Street in New Orleans. On August 21, 2003, Sean
 
 &
 
 Scott, L.L.C. purchased the property from The Missionary Servants of the Most Holy Trinity, and the property was transferred to Audubon, L.L.C. on March 5, 2004. Both Sean & Scott, L.L.C. and Audubon, L.L.C., the appellant, are managed by Mr. Craig Tolbert. 624 Audubon Street is located in a residential district that is zoned RM-1 Multi-family Residential, under the City of New Orleans Comprehensive Zoning Ordinance (CZO). The building at issue predates the current zoning ordinance.
 

 Sometime in the fall of 2003, Mr. Tolbert rented the home to foreign exchange students attending Tulane University while planning to make various | ¿renovations to the property as well. Said students lived at 624 Audubon Street until the end of the spring 2004 semester. In the summer of 2004, Audubon, L.L.C. filed an application with the City of New Orleans — Department of Safety and Permits, to renovate their property into a double dwelling. The Department of Safety and Permits issued Building Permit No. 04BLD-01248 to Audubon, L.L.C. on June 29, 2004.
 

 Paul Cordes and Paulette Hurdlik, plaintiffs and appellees in this action, are neighbors of 624 Audubon Street. Mr. Cordes resides at 630 Audubon Street, next to the subject property. Appellees disagreed with the decision of the Department of Safety and Permits to grant Audubon, L.L.C. a building permit to convert 624 Audubon Street into a double dwelling. Appellees timely appealed the decision to grant said permit to the Board of Zoning Adjustments (BZA).
 

 At the BZA hearing of September 13, 2004, plaintiff Paul Cordes testified that he filed his complaint “based on the fact that the permit [issued to Audubon, L.L.C.] allows the house to be converted from one non-conforming use to another non-conforming use.” [R. p. 164]. Mr. Cordes further alleged that the house violates the CZO’s floor area ratio (FAR), front yard setback, and open space ratio requirements. Also testifying on behalf of Mr. Cordes’ position at the BZA hearing was Keith Hardie, who is Mr. Cordes’ counsel in the current action. Mr. Hardie is a neighbor who lives at 618 Audubon Street, two houses down from appellant’s subject property. Both Mr. Cordes and Mr. Har-die argued that the permit allowed an unlawful conversion of a non-conforming use to a more intensive and less restrictive use of the property. Mr. Hardie also objected to the permit because he felt it would have led to a problematic parking situation in the neighborhood.
 

 laTestifying before the BZA on behalf of Audubon, L.L.C. was Robert Biery, an architect hired by the Tolberts to help perform renovations of 624 Audubon Street. Mr. Biery testified that in order to receive a permit for a double-dwelling from the Department of Safety and Permits, the Tolberts were required to seal off
 
 *507
 
 the third floor so that the amount of livable square footage was more compatible with the floor area ratio requirements in RM-l-zoned double dwellings.
 

 Also testifying on behalf of Audubon, L.L.C. was Greg Napoli, another neighbor. Mr. Napoli testified that “this is a university area. I am somewhat familiar with this piece of property. I know it is 10 bedrooms and 10 bathrooms. To get a single family to live in a building that is 10 bedrooms and 10 bathrooms, it’s a little strange.” [R. p. 170] Finally, testifying on behalf of upholding the permit was Mike Centineo, Director of the Department of Safety & Permits. Mr. Centineo testified that 624 Audubon Street:
 

 “was an existing building that predated the current zoning ordinance as far as the size and bulk and height regulations. The owners applied for a permit for a duplex and the property is zoned multifamily residential. And given the argument that the building was reducing the square footage by taking away the third floor of useable area, the department felt they were bringing it more into conformity and based their approval on that.” [R. p. 172]
 

 Upon hearing the above-mentioned testimony and the testimony of the parties themselves, the BZA voted 4-1 in favor of upholding the Department’s decision to grant a building permit to allow 624 Audubon Street to convert into a double dwelling. Pursuant to La.Rev.Stat. § 33:4727, Mr. Cordes and Ms. Hurdlik filed a Petition for Writ of Certiorari and Judicial Review with the Civil District Court to seek a review of the decision of the BZA to uphold the granting of a permit to appellant to convert 624 Audubon Street into a double dwelling.
 

 |4On October 29, 2008, the district court conducted a full bench trial on the merits with additional testimony regarding the appeal from the BZA brought forth by Mr. Cordes and Ms. Hurdlik. At the district court, Mr. Cordes reiterated that the floor area ratio, open space ratio, and front yard setback of the property all violated the CZO. He also testified that the third floor was being used by students that the Tol-berts had rented the property to, despite the agreement between the Tolberts and the Department of Safety and Permits to seal off the third floor to create a more acceptable floor area ratio. Mr. Cordes entered the property on numerous occasions while workers were present, but never with the permission of the Tolberts. Mr. Cordes further testified that the building permits that he had seen on the door of the appellant’s property stated that the property was a single family residence undergoing various renovations and conversions into a duplex.
 

 Steve Garland, an electrical contractor retained by the Tolberts, testified at trial that the house at issue was wired as if it was a triplex wired from one electrical meter. On cross-examination, Mr. Tolbert testified that a permit dated April 1, 2004 contained the words “SFD,” representing an indication of a single-family dwelling. Mr. Tolbert claimed that the Department of Safety and Permits filled out this portion, and that classifying the building as a single family dwelling was necessary to receive a permit to allow conversion into a double dwelling. He further stated that the Department of Safety and Permits “filled in the residence as a single dwelling. I never told them it was a single.” Mr. Tolbert felt that the city may have had the property classified as a single family dwelling because “they wouldn’t let me have a permit without putting that down.”
 

 Mr. Biery again testified on behalf of appellant at the district court. He was accepted by the court as an expert witness in the field of architecture. Mr. Biery
 
 *508
 
 | .^testified that the property was “obviously being used as some kind of a group home,” though it had only one address and one mailbox. He further testified that the property had one large kitchen on the first floor and had remnants or “marks” of kitchens on the upper floors. He stated that there were ten or twelve bedrooms, and that some bedrooms had private bathrooms attached while some bedrooms had shared bathrooms. His ultimate position was that the property had been most likely used as an apartment building in the past. Mr. Paul May, the Director of the Department of Safety and Permits, testified on behalf of appellant and in support of the BZA’s decision to uphold the permit of June 29, 2004.
 

 Following this trial of October 29, 2008, the district court ruled in favor of Mr. Cordes and Ms. Hurdlik, and reversed the decision of the Board of Zoning Adjustments to grant a double-dwelling building permit to Audubon, L.L.C. The district court further ordered appellant to cease and desist from utilizing 624 Audubon Street as anything other than a single family residence. The court also revoked all permits that were not in line with use of the property as a single family dwelling.
 

 In its Reasons for Judgment of April 9, 2009, the district court held that “the BZA appeared to acknowledge that this was a single family dwelling and that the owner was seeking the right to convert it to a duplex.” The court listed various reasons that the property was a single family dwelling at the time of appellant’s application for a permit to convert it to a double: a 1998 Certificate of Completion for electrical work to a “single family dwelling”; the 2003 sales listing of the home as a single family home; and permit applications by appellant in which the property was described as a single family dwelling. The court concluded that “the BZA was correct to find that this property was a single family dwelling.” The district court ^further held that 624 Audubon Street was “non-conforming,” and that once the property was used as a single family dwelling, “it is a violation of the CZO for it to convert to a less restrictive use.” The district therefore reasoned that the BZA’s decision to uphold the conversion into a double-family dwelling was in error.
 

 Assignments of Eiror
 

 Appellant, Audubon, L.L.C., raises a first assignment of error that the district court committed manifest error in reaching a verdict in favor of plaintiffs and reversing the decision of the Board of Zoning Adjustments. Appellant further alleges that the district court erred in determining that their property at 624 Audubon Street was a single family dwelling.
 

 Standard of Review
 

 Questions of law are reviewed by this Court under the
 
 de novo
 
 standard of review.
 
 Sarpy v. ESAD, Inc.,
 
 2007-0347, p. 4 (La.App. 4 Cir. 9/19/07), 968 So.2d 736. The purpose of certiorari review by the district court of decisions of boards and quasi-judicial tribunals is to “determine whether jurisdiction has been exceeded, or to decide if the evidence establishes a legal and substantial basis for the Board’s decision.”
 
 Elysian Fields, Inc. v. St. Martin,
 
 1991-0333 (La.App. 4 Cir. 1/30/92), 600 So.2d 69, 72. This Court has further held that decisions of the Board of Zoning Adjustments are afforded a presumption of validity.
 
 Flex Enterprises, Inc. v. City of New Orleans,
 
 2000-0815 (La.App. 4 Cir. 2/14/01), 780 So.2d 1145, 1149. However, the presumption is rebuttable.
 
 Curran v. Board of Zoning Adjustments Through Mason,
 
 1990-1441 (La.App. 4 Cir. 6/18/91), 580 So.2d 417, 418. Finally, a reviewing court should not merely substitute its own judgment for that of the BZA unless there is a showing that the Board acted arbi
 
 *509
 
 trarily and capriciously, the Board abused its discretion, or the Board rendered |7a decision that was manifestly erroneous in light of substantial evidence in the record.
 
 King v. Caddo Parish Commission,
 
 97-1873 (La.1998), 719 So.2d 410.
 

 Law and Analysis
 

 Under La.Rev.Stat. § 33:4727(A)(1), a board of adjustment “may determine and vary” zoning regulation applications “in harmony with their general purpose and intent and in accordance with the general or specific rules contained therein.” Under La.Rev.Stat. § 33:4727(C)(3)(c), the Board of Zoning Adjustments shall have the power to:
 

 “in passing upon appeals, where there are practical difficulties or unnecessary hardships in the way of carrying out the strict letter of the ordinance, to vary or modify the application of any of the regulations or provisions of the of the ordinance relating to the use, construction, or alteration of buildings or structures or the use of land so that the spirit of the ordinance shall be observed, public safety and welfare secured, and substantial justice done.”
 

 Under La.Rev.Stat. § 33:4727(E), the district court, upon petition for review, may allow a writ of certiorari to review decisions by the Board of Zoning Adjustments. The district court may take additional testimony or receive additional evidence as part of its consideration of such an appeal from the BZA. La.Rev.Stat. § 33:4727(E)(4). Such additional evidence and testimony may be entertained whenever the district court is of the opinion it is warranted.
 
 Lakeshore Property Owners Association v. City of New Orleans Board of Zoning Adjustments,
 
 85-3542 (La.App. 4 Cir. 12/11/85), 481 So.2d 162, 165.
 

 It is undisputed that the property at issue, 624 Audubon Street, is located in an area zoned RM-1: Multiple-Family Residential District under the City of New Orleans Comprehensive Zoning Ordinance (CZO). An RM-1 district:
 

 “is intended to maintain low-medium residential densities as might be appropriate for garden apartment developments in outlying areas, and at the same time, to permit a variety of housing types. Population density and height of buildings are low enough to be generally [ ^compatible with single family residential development in the same general neighborhood.” Comprehensive Zoning Ordinance Article 4, Section 4.8.1.
 

 Article 4, Section 4.8.3 of the Comprehensive Zoning Ordinance describes the permitted uses in an RM-1 district:
 

 4.8.3: Permitted Uses
 

 The following uses of land are authorized as permitted uses in the RM-1 Multiple-Family Residential District except that timeshare buildings and transient vacation rentals are prohibited:
 

 1. Any permitted use authorized in the RS-1 Single-Family Residential District.
 

 2. Two-family dwellings (See Section 11.33)
 

 3. Town houses (See Section 11.33)
 

 4. Multiple-family dwellings.
 

 5. Homes for the aged, nursing homes, convalescent homes and orphans homes.
 

 6. Convents and monasteries.
 

 7. Child care facilities. (See Section 11.15)
 

 8. Small group homes. (See Section 11.22)
 

 It is undisputed that the building at issue was constructed prior to the effectiveness of the CZO. Under Article 13, Section 13.1.2, “any buildings legally under construction but not in accord with the
 
 *510
 
 requirements of this Ordinance, will become nonconforming at the time this Ordinance or an amendment thereto becomes effective.” The CZO defines a nonconforming use as “a building or land which does not conform with the height, area, or use regulations of the district in which it is located.” Comprehensive Zoning Ordinance, Article 2, Section 2.2(134).
 

 The general rule to changes of nonconforming use is provided by Article 13, Section 13.4.1 of the Comprehensive Zoning Ordinance:
 

 In all districts, except the Vieux Carré Districts and the Historic Marig-ny/Tremé Districts, if no structural alterations are made, a nonconforming use of a building may be changed to another nonconforming use of the same or more restrictive classification, provided that the new nonconforming use is not more intensive than the prior use. Whenever a nonconforming use of a building has beenjcjchanged to a more restricted use or to a conforming use, such use shall not thereafter be changed to a less restricted use.
 

 The Comprehensive Zoning Ordinance also differentiates between nonconforming uses and nonconforming structures:
 

 13.5.1. Extension of Nonconforming Structures.
 

 Buildings which are nonconforming only as to height, Floor Area Ratio, yard areas, lot area per family, or parking may be maintained, structurally altered or increased in cubical content, provided such alteration or increase in cubical content shall not further increase the extent of the nonconformance or permit an increase in the number of dwelling units. Limitations as to cubical content and increase in floor area shall not apply to existing industrial uses in the Vieux Carré.
 

 13.5.2. Extension of Nonconforming Uses.
 

 A building or land (area) which does not conform to the use regulations of the district in which it is located shall not be extended or enlarged by the attachment of display materials on the building or on land outside of the building, or by the attachment of racks, balconies, or other projections from the building, or in any other manner, except when required by law or ordinance.
 

 At issue in this matter is whether the BZA’s decision to uphold the granting of a permit to convert the appellant’s property into a double-family dwelling was in violation of the Comprehensive Zoning Ordinance or other Louisiana law. The district court, in its position as a reviewing court, determined that the BZA’s decision was in upholding the conversion of the building from a single family dwelling into a double dwelling was in violation of the CZO and Louisiana law. We disagree.
 

 First, the appellees’ arguments contain a fundamental misunderstanding of what constitutes a nonconforming use. Appel-lees argue that 624 Audubon Street is a nonconforming use under the CZO. While the CZO includes height or area | innonconformity in its definition of a nonconforming use, The Louisiana Supreme Court has more narrowly defined a nonconforming use as:
 

 [а] use which lawfully existed prior to the enactment of a zoning ordinance, and which is maintained after the effective date of the ordinance although it does not comply with the use restrictions applicable to the area in which it is situated.
 
 Redfearn v. Creppel,
 
 83-2188 (La.1984), 455 So.2d 1356, 1358.
 

 A legal nonconforming use is “designed to protect those uses which were established before the enactment of a restrictive zoning regulation.”
 
 Weisler v.
 
 
 *511
 

 Board of Zoning Adjustments,
 
 98-3007 (La.App. 4 Cir. 11/17/99), 745 So.2d 1259, 1261;
 
 Humphrey v. Robertson,
 
 97-1742, p. 8 (La.App. 4 Cir. 3/11/98), 709 So.2d 333, 337. Since a nonconforming use is inconsistent with the purpose of zoning ordinances, decisions regarding such status should be viewed narrowly with all doubt resolved against continuation or expansion of the non-conforming use.
 
 Weisler, supra,
 
 745 So.2d at 1261. However, this principle should be confused with the principle that a zoning ordinance, being in derogation of the rights of private ownership, must be construed, when subject to more than one reasonable interpretation, according to the interpretation which allows the least restricted use of the property.
 
 Id.
 

 In this matter, it has been alleged by the appellees that the property at 624 Audubon Street does not meet the floor area ratio, open space ratio, and front yard setback requirements of an RM-1 zoned district. However, land and area shortcomings are irrelevant in determining as to whether the property at issue is a nonconforming use. Under Louisiana jurisprudence, nonconforming use restrictions apply only when a building is being used in a matter not in accordance with the use regulations of that zoning district. In essence, the only factor is whether the building’s use is allowed by the zoning regulations of the district that | nit lies in. The building’s shortcomings on area or land does not constitute a nonconforming use. The recent jurisprudence from this Court on nonconforming use cases involves the manner of use, and not conformity of the subject building in height, area or land.
 
 See Flex Enterprises, supra,
 
 at p. 11, 780 So.2d 1145 (pertaining to the proposed use of a building as a health club);
 
 FQCPRQ v. Brandon Investments, LLC,
 
 2005-0793 (La.App. 4 Cir. 3/29/06), 930 So.2d 107 (pertaining to a hotel operating in a residential district); and
 
 Craig v. City of New Orleans Board of Zoning Adjustments,
 
 2004-1709 (La.App. 4 Cir. 5/4/05), 903 So.2d 530 (pertaining to a transient vacation rental building in a two-family residential district).
 

 In this matter, the building, like most buildings that predate CZO, did not meet the floor area and open space ratios called for in buildings in RM-1 Multi-family residential districts. The testimony from the BZA establishes that the house may have been a multi-family dwelling or a single family dwelling, both of which are proper uses in an RM-1 district.
 

 The appellants established at the BZA hearing and at the district court that there are numerous other multi-family dwellings in this district. Double dwellings are allowed in an RM-1 district. It cannot be said that converting the property from one allowable use to another violates the use regulations of an RM-1 Multi-Family Residential District. Therefore, under prior Louisiana jurisprudence, we hold that the property at 624 Audubon Street has not and has never been a nonconforming use. Therefore, the district court’s reliance on Article 13, Section 13.4.1 in determining that 624 Audubon Street is a nonconforming use is without merit. There always been proper use of the building in question in accordance with Article 4, Section 4.8.3 of the CZO (cited above). As a result, the appellees’ |12argument that this conversion into a double dwelling is more intensive and less restrictive is without merit.
 

 Finally, appellees rely on Article 13, Section 13.5.1 to argue that the proposed conversion to a double family dwelling violates the CZO because it creates additional dwelling units, and that the appellant’s building is still in violation of the floor area ratio, open space ratio, and frontyard setback requirements for buildings in an RM-
 
 *512
 
 1 district. As a building that predates the current zoning ordinance and fails to meet the proper floor area, open space, and setback requirements, the property at issue is a nonconforming structure. However, the Department of Safety and Permits had formulated a plan for the building that would bring it into greater conformity with the zoning laws and allow the appellant better use of his property. It is well settled, and in fact, “the first principle of zoning law,” that:
 

 “because zoning ordinances are in derogation of a citizen’s constitutionally protected right to own and use his property, they must be construed, when subject to more than one reasonable interpretation, according to the interpretation which allows the least restricted use of the property,”
 
 City of New Orleans v. Elms, supra,
 
 566 So.2d at 632.
 

 It is the opinion of this Court that by allowing the conversion of the property into a double-dwelling and reducing the floor area usage, the BZA exercised its wide discretion under La.Rev.Stat. § 33:4727(C)(3)(e) to modify “vary or modify the application of any of the regulations or provisions of the ordinance” when there are practical difficulties or unnecessary hardships in carrying out the strict letter of the ordinance. The BZA did not abuse its discretion or arbitrarily determine that a double dwelling was an allowable use and more appropriate given the size, dimensions, and number of rooms in the building. As such, the BZA exercised its legislatively designated authority in granting the Tolberts their full right to use | iatheir property in a lawful manner. The BZA agreed with the Department of Safety and Permit’s decision that allowing a double-family dwelling conversion would bring the property more in conformity with the floor area ratio and other spacial requirements.
 

 Conclusion
 

 It is clear that the BZA acted within its authority to not infringe upon the appellant’s rights to use their property in a manner clearly allowed in an RM-1 MultiFamily Residential District. The BZA was ultimately not persuaded by appellees’ arguments that the floor area ratio was in violation, and was satisfied with the Department’s decision to reduce the square footage of living space to bring the property more into conformity with the applicable zoning laws. The vast majority of buildings in the entire city of New Orleans that predate the current zoning laws are in violation of such structural and area requirements. The governing body is called the Board of Zoning Adjustments for a reason: they are charged with making the ajopropriate adjustments to zoning regulations so that the right to use one’s own property is not seriously infringed by the letter of the zoning laws.
 

 Finally, the appellees essentially argue that 624 Audubon Street remains too large to be a double dwelling in an RM-1 district, but ignore the fact that the building would be in greater violation of the CZO as a single family dwelling. It is simply flawed logic to argue that the property is too large to be a double dwelling, but somehow not too large to be a single family dwelling.
 

 Decree
 

 It is the opinion of this Court that the Department of Safety and Permits and Board of Zoning Adjustments acted within its authority in the law, and that the | uBoard did not act arbitrarily and capriciously, abuse its discretion, or render a decision that was manifestly erroneous in light of substantial evidence in the record.
 
 King v. Caddo Parish Commission, supra,
 
 719 So.2d 410. Accordingly, the April 9, 2009 judgment of the district court is reversed, and the decision of the Board of
 
 *513
 
 Zoning Adjustments to uphold granting of the building permit of June 29, 2004 is restored.
 

 REVERSED.